DAVID E. NEWBOLD, ADMINISTRATOR OF THE ESTATE OF ZACK ELWOOD NEWBOLD v. GLOBE LIFE INSURANCE COMPANY

No. 804SC284

(Filed 17 February 1981)

**Insurance § 27.1— credit life and disability insurance**

    In an action to recover on a policy of credit life and disability insurance issued by defendant where defendant alleged that no charge was made for life insurance but only for disability insurance and therefore that the death of plaintiff's decedent was not the event against which the policy insured, the trial court properly entered judgment for plaintiff, since all policies of "credit, accident and health insurance" issued in the State of N. C. cover "death or personal injury by accident" as well as "sickness, ailment or bodily injury." G.S. 58-342(2); G.S. 58-254.8.

APPEAL by defendant from *Stevens, Judge.* Judgment entered 23 January 1980 in Superior Court, ONSLOW County. Heard in the Court of Appeals 17 September 1980.

Plaintiff filed a complaint against defendant on 6 September 1979 alleging that defendant wrongfully refused to pay insurance proceeds following the death of plaintiff's decedent. Plaintiff alleged that his decedent applied to defendant for issuance of an insurance policy on or about 21 March 1978, as evidenced by a "Notice of Proposed Credit Life and Disability Insurance" incorporated by reference into the complaint, and that defendant issued a policy to decedent. The complaint stated that issuance of the policy to plaintiff's decedent was evidenced by a "Certificate of Insurance, Credit Life-Credit Disability Insurance," which was also incorporated by reference, bearing decedent's name and address as "Insured Debtor"; the name and address of the car dealer from which decedent purchased an automobile on credit; and the name and address of the Bank of North Carolina as "Creditor." Plaintiff then alleged that the insurance policy became effective 21 March

1978, and that his decedent died as the result of a boating accident on 2 April 1978. Plaintiff made formal demand for payment of the insurance proceeds on 12 June 1978 and again on 11 August 1978, and defendant refused payment.

Defendant filed a combined answer and motion for judgment on the pleadings pursuant to G.S. 1A-1, Rule 12(c), on 11 October 1979. In its motion, defendant contended the court should enter judgment on the pleadings in its favor because the allegations of the complaint demonstrated that plaintiff was not entitled to any relief and that defendant was entitled to judgment as a matter of law. In its answer, defendant alleged that plaintiff's complaint failed to state a claim upon which relief could be granted; admitted that plaintiff's decedent applied for insurance with defendant; denied that the policy of insurance had been issued; admitted that plaintiff's decedent died on 2 April 1978; and admitted that plaintiff demanded payment which defendant refused.

The parties stipulated that the decision on defendant's motion as finally determined on any and all appeals would constitute judgment on the merits. The trial court found defendant was not entitled to the relief sought in its motion and rendered judgment on the merits in favor of plaintiff in the amount of $6,100.00. From this judgment, defendant appeals.

*Bailey, Raynor and Erwin by Frank W. Erwin for plaintiff-appellee.*

*Wallace, Langley, Barwick and Landis by R. F. Landis, II, and Joseph S. Bower for defendant-appellant.*

WHICHARD, Judge.

In its sole assignment of error defendant contends the pleadings and exhibits thereto do not support the judgment and that, on the contrary, they establish that plaintiff has not stated a claim for relief. The parties stipulated that decision on defendant's motion would constitute judgment on the merits. The judgment thus "in effect determines the action," and appeal at this point is proper. G.S. 1-277 (1971).

Under Rule 12(c), a party moving for judgment on the pleadings "is held to a strict standard and must show that no material issue of facts exists and that he is clearly entitled to judgment."

*Ragsdale v. Kennedy,* 286 N.C. 130, 137, 209 S.E.2d 494, 499 (1974). In passing on the motion "[t]he trial court is required to view the facts and permissible inferences in the light most favorable to the non-moving party." *Ragsdale,* 286 N.C. at 137, 209 S.E.2d at 499. The motion by defendant thus should be denied if the complaint contains allegations which, if proved, would permit recovery by plaintiff. *See* 5 Wright and Miller, Federal Practice and Procedure, § 1368 at 695 (1969).

When we view plaintiff's complaint in this light, we find that it alleges issuance by defendant to plaintiff's decedent of a credit life-credit disability insurance policy effective 21 March 1978; that plaintiff's decedent died on 2 April 1978; and that plaintiff made formal demand for payment pursuant to the policy, which payment defendant refused. By definition, a valid credit life-credit disability policy issued to decedent prior to death would be payable upon decedent's death. G.S. 58-342(3) (Supp. 1979).[1] Thus, if plaintiff could prove the allegations of his complaint, he would be entitled to the relief sought. The trial court, therefore, properly denied defendant's motion for judgment on the pleadings.

In reviewing the merits of the case, pursuant to the parties' stipulation, the trial court had to consider not only the sufficiency of plaintiff's allegations, but also the sufficiency of his proof and the question of whether defendant had interposed a valid defense. The record reviewed consisted of the complaint, the application for insurance, the certificate of insurance, letters of demand for payment, and refusal thereof, and defendant's answer and motion. Neither plaintiff nor defendant introduced evidence.

Proof of (1) execution and delivery of an insurance policy, (2) payment of premiums thereon, and (3) the happening of the event against which the policy insured, "makes out a *prima facie* case" of liability on a policy of insurance. *Terrell v. Insurance Co.,* 269 N.C. 259, 261, 152 S.E.2d 196, 198 (1967). Here, as to (1), defendant's

---

[1]This section defines credit life insurance as "insurance on the life of a debtor pursuant to or in connection with a specific loan or other credit transaction as defined in G.S. 58-195.2." G.S. 58-195.2 provides:

> Credit life insurance is declared to be insurance upon the life of a debtor who may be indebted to any person, firm, or corporation extending credit to said debtor. Credit life insurance may include the granting of additional benefits in the event of total and permanent disability of the debtor.

letter to plaintiff's attorney, which is incorporated by reference into the complaint, acknowledges that decedent applied for insurance and that a certificate of insurance was issued to him. As to (2), this letter also admits that plaintiff's decedent paid the premium charged for this insurance by financing the amount of the premium as part of the total indebtedness on the automobile he purchased in the transaction. As to (3), defendant's answer admits that plaintiff's decedent died on 2 April 1978. Defendant contends, however, that the *death* of plaintiff's decedent was not the event against which the policy insured; that the certificate issued represented insurance against *disability only*, and that decedent neither applied for nor obtained a policy insuring against his death. Because the first two requirements set forth in *Terrell* have been met, the sole remaining question is whether the policy, admittedly applied for and issued and on which the premiums admittedly were paid, insured against decedent's death, which admittedly has occurred.

Defendant bases its contention that the death of plaintiff's decedent was not the event insured against on the fact that the certificate of insurance contained the letters "n.a." (for "not applicable") in the space designated "life insurance charge" and contained the figures "$670.22" in the space designated "total disability insurance charge." It argues that the "disability" policy issued to decedent was a type of "credit accident and health insurance" within the meaning of that term as used in G.S. 58-254.8, which provides as follows:

> Credit accident and health insurance is declared to be insurance against death or personal injury by accident or by any specified kind or kinds of accident, and insurance against sickness, ailment, or bodily injury of a debtor who may be indebted to any person, firm, or corporation extending credit to such debtor.

The premise of defendant's contention is that this statute provides for two types of credit accident and health insurance — one insuring against "sickness, ailment, or bodily injury" only, and not against "death or personal injury by accident"; the other insuring against "death or personal injury by accident" — and that the policy it issued was in the first category, insuring against "sickness, ailment, or bodily injury" only. Our review of the legislative history of

General Statutes Chapter 58, subchapter VIII, article 32, entitled The North Carolina Act for the Regulation of Credit Life Insurance and Credit Accident and Health Insurance [hereinafter the Act], and our interpretation of the intent of the General Assembly in prescribing the Act, lead us to reject the interpretation of G.S. 58-254.8 for which defendant contends.

The initial section of the Act, in pertinent part, provides:

> All credit life insurance and all credit accident and health insurance as defined herein and written in connection with . . . consumer credit installment sales contracts of whatever term permitted by G.S. 25A-33 . . . shall be subject to the provisions of this Article . . . . The provisions of this Article shall be controlling as to such insurance and no other provisions of this Chapter shall be applicable unless otherwise specifically provided.

G.S. 58-341 (Supp. 1979). The insurance policy issued by defendant to plaintiff's decedent fell within the above provision, and is therefore subject to the regulatory provisions of the Act.

The Act provides for the issuance of two types of credit insurance, (1) credit life insurance, and (2) credit accident and health insurance. G.S. 58-341 et seq. (Supp. 1979). Section 58-343 authorizes the forms of insurance which may be issued as follows:

> Credit life insurance and credit accident and health insurance shall be issued only in the following forms:
>
> (1) Individual policies of life insurance issued to debtors on the term plan;
> (2) Individual policies of accident and health insurance issued to debtors on a term plan or disability benefit provisions in individual policies of credit life insurance;
> (3) Group policies of life insurance issued to creditors providing insurance upon the lives of debtors on the term plan;
> (4) Group policies of accident and health insurance issued to creditors on a term plan insuring debtors or disability benefit pro-

> visions in group credit life insurance pol-
> icies to provide such coverage.

G.S. 58-343 (Supp. 1979). The certificate issued to decedent stated that it was a "Creditor's Group Life and Disability Insurance Policy." The title places the policy within subsections (3) and (4) above as a group credit life policy with "disability benefit provisions in [a] group credit life" policy. The Act defines credit accident and health insurance as "insurance on a debtor to provide indemnity for payments becoming due on a specific loan or other credit transaction as defined in G.S. 58-254.8" (which is quoted above). G.S. 58-342(2) (Supp. 1979).

The provisions of the Act in its entirety indicate that the phrase "credit accident and health insurance" describes one type of insurance. The terms "accident" and "health" appear conjunctively throughout the Act. The Act in no way states or implies that an insurer may issue either credit accident insurance alone, or credit health insurance alone.

Just as the provisions of the Act indicate that credit accident and health insurance is one type of insurance, the definition of credit accident and health insurance describes a single type of insurance. Section 58-254.8 provides that credit accident and health insurance is "insurance against death or personal injury by accident . . . *and* insurance against sickness, ailment, or bodily injury." G.S. 58-254.8 (1975) (emphasis added). The phrase "against death or personal injury by accident" and the phrase "against sickness, ailment, or bodily injury" are conjunctive and *together* define one type of insurance.

The legislative history of the Act also indicates the intent to provide a single definition of the coverage of all credit accident and health insurance policies. When it drafted the Act, the General Assembly drew most of its provisions verbatim from the National Association of Insurance Commissioners' Model Act to Provide for the Regulation of Credit Life Insurance and Credit Accident and Health Insurance [hereinafter the Model Act]. Significantly, however, it rejected the Model Act definition of credit accident and health insurance. The Model Act provides, in pertinent part, as follows:

> B. Definitions
> For the purpose of the Act:

. . .
(2) Credit accident and health insurance: means insurance on a debtor to provide indemnity for payments becoming due on a specific loan or other credit transaction while the debtor is disabled as defined in the policy; . . . .

The Model Act, National Association of Insurance Commissioners Proceedings (1958). The North Carolina Act incorporates the definition of credit accident and health insurance found in G.S. 58-254.8, which had been adopted in 1958, in place of the phrase "while the debtor is disabled as defined in the policy." By adopting a definition of credit accident and health insurance contained in a pre-existing North Carolina statute, while retaining most other Model Act provisions verbatim, the General Assembly indicated a specific intent to reject the Model Act provision which gave individual insurers control over the coverage of credit accident and health policies. It would appear from this deviation from the Model Act that the legislature intended to provide for uniformity of coverage by requiring that all policies of "credit accident and health insurance" issued in the State of North Carolina cover "death or personal injury by accident" as well as "sickness, ailment, or bodily injury." G.S. 58-342(2) and 58-254.8.

The Act, then, as we interpret it, provides that "disability benefits" may be provided for in policies of credit life insurance, G.S. 58-343(2) and (4) (Supp. 1979); but it does not authorize the issuance of credit insurance against disability only. Its apparent regulatory purpose was to insure that funds would be available with which to pay the debt for payment of which the insurance was obtained, regardless of whether the insured's inability to pay resulted from disability or from death. Because "[t]he laws existing at the time and place of a contract form a part of it", *Boyce v. Gastonia*, 227 N.C. 139, 144, 41 S.E.2d 355, 358 (1947), the contract of insurance here covered decedent's death by accident by virtue of the provisions of General Statutes Chapter 58, subchapter VIII, article 32. The trial court thus properly entered judgment for plaintiff on the merits, and its judgment is

Affirmed.

Chief Judge MORRIS and Judge HEDRICK concur.