IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA17-1149

Filed: 5 June 2018

New Hanover County, No. 16-CVS-1333

WILLIAM P. EMERSON, JR., Plaintiff,

v.

CAPE FEAR COUNTRY CLUB, INCORPORATED, Defendant.

Appeal by Plaintiff from order entered 5 June 2017 by Judge Andrew Heath in New Hanover County Superior Court. Heard in the Court of Appeals 5 March 2018.

*Block, Crouch, Keeter, Behm & Sayed, LLP, by Daniel Lee Brawley and Auley M. Crouch, III, for plaintiff-appellant.*

*Cranfill, Sumner & Hartzog, LLP, by Benton L. Toups and Elizabeth C. King, for defendant-appellee.*

MURPHY, Judge.

N.C.G.S. § 55A-6-31(a) calls for nonprofit corporations to act "in a manner that is fair and reasonable and . . . in good faith" when they terminate or suspend a membership. N.C.G.S. § 55A-6-31(a) (2017). However, it does not require a country club's board of directors, in all situations, to provide a member with prior notice or an opportunity to be heard regarding the termination of a membership.

Plaintiff, William P. Emerson, Jr. ("Emerson"), appeals from the trial court's order granting summary judgment in favor of Defendant, Cape Fear Country Club, Inc. ("Club"), a nonprofit corporation, on all of Emerson's three claims. In his Complaint, filed 21 April 2016, Emerson sought declaratory judgments as to (1)

Emerson's membership status in the Club and (2) whether the Club could, in alleged compliance with N.C.G.S. § 55A-6-31(a), conduct a curative hearing after Emerson's membership had been terminated. Emerson's third claim for relief sought compensatory and punitive damages for his hypothetical expenses in joining a comparable country club and for the Club's purportedly wrongful and malicious termination of his membership.

Below, we address (1) the statutory requirement of N.C.G.S. § 55A-6-31(a), (2) Emerson's failure to mitigate his alleged damages, and (3) the mootness of Emerson's remaining claims. While we hold that the statute does not require prior notice and a participatory hearing in all situations, even if notice and a hearing are required here, Emerson failed to mitigate his alleged damages resulting from the Club's alleged violation of N.C.G.S. § 55A-6-31(a). Thus, Emerson is barred from recovering the compensatory and punitive damages sought in his Complaint. Due to our resolution of Emerson's third claim for relief, his first two claims under the Declaratory Judgment Act are moot, and we decline to address them. Accordingly, we affirm the trial court's grant of summary judgment in favor of the Club on each of Emerson's claims.

## BACKGROUND

On 1 January 2016, Emerson, who had been a member of the Club for approximately 30 years, had a disagreement with an employee in the golf shop.[1] The employee reported the incident to the Club's General Manager, Mary Geiss, who brought the matter to the attention of the Executive Committee by email on 2 January 2016. This was not Emerson's first act of misbehavior, and Club President Buck Beam and other members of the Executive Committee met on 5 January 2016 to discuss the incident. The Executive Committee then called a special meeting of the Board of Directors ("Board"), which met and voted on 7 January 2016 to terminate Emerson's membership.

It is uncontested that Emerson was aware neither of the Executive Committee's nor the Board's deliberations until 8 January 2016, when the Club President and two other Board members called Emerson to advise him of his termination. Emerson also received a letter from the Club President dated 8 January 2016 informing him of his termination. The letter provided the grounds for termination, stating that it was "in response to [Emerson's] actions on club property on January 1, 2016 and [Emerson's] cumulative disciplinary history while a member

---

[1] The nature and content of the 1 January 2016 incident are somewhat in dispute. In his affidavit, the Club President relayed the contents of an email from the Club Manager, who wrote that Emerson used expletives in his conversations with Club employees and in front of Club guests during the 1 January 2016 exchange and declared, "[T]his is war," to one of the Club employees. In his deposition testimony, Emerson claimed that he was not shouting or cursing during the exchange and disagreed with one Club employee's characterization of the exchange between Emerson and the employee. Later in his deposition, Emerson did not object to another witness's description of the incident as a "profanity-laced tirade" by Emerson.

of Cape Fear Country Club." Emerson's disciplinary history at the Club included one incident on or about 27 February 2005 and another incident on 29 April 2007.

In the February 2005 incident, Emerson got in an argument with another Club member, which resulted in damage to Club property. Emerson also threatened a Club employee's job. In response to the 2005 incident, Emerson was suspended for thirty days, placed on a twelve-month probation period, given a twelve-month alcohol prohibition, fined $1,500, and required to replace the damaged property and apologize to the employees involved. Emerson appealed and was given an opportunity to appear before the Board. The Club eliminated the twelve-month probationary period, the twelve-month alcohol prohibition, and the $1,500 fine as conditions of Emerson's punishment. Although the record reflects that Emerson came on to Club premises during his suspension, thus violating its terms, his written apology of 3 June 2005 prompted the Club's then-President to lift Emerson's suspension.

In the April 2007 incident, Emerson had some sort of dispute with another Club member in the Card Room after a disagreement over a golf bet. As a result, Emerson's membership was suspended for six months. Emerson's initial readmittance was unsuccessful after Emerson's "address at the Board of Directors meeting," and the Board decided to extend Emerson's suspension for an additional six months. The Board received letters on Emerson's behalf from other Club members

and decided to invite Emerson back to his membership approximately two months after imposing the additional six-month suspension.

In the instant matter, after notifying Emerson of the termination of his membership by letter dated 8 January 2016, the Club President sent Emerson another letter dated 5 February 2016. This subsequent letter advised Emerson that the Board "[was] prepared to provide [Emerson] an opportunity to speak on [his] behalf concerning the termination of [his] membership." Emerson acknowledged receipt by letter on 12 February 2016 but declined to attend the proposed 15 February 2016 meeting.

Emerson filed his Complaint on 21 April 2016. After discovery and depositions, the trial court disposed of Emerson's claims by entering summary judgment in favor of the Club. Emerson timely appealed.

## ANALYSIS

"The standard of review for summary judgment is de novo." *Forbis v. Neal*, 361 N.C. 519, 524, 649 S.E.2d 382, 385 (2007). Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C.G.S. § 1A-1, Rule 56 (2017). Additionally, we draw all inferences of fact in favor of the non-moving party. *Forbis*, 361 N.C. at 524, 649 S.E.2d at 385.

Emerson's Complaint raises questions about the procedural requirement of N.C.G.S. § 55A-6-31, which governs the termination, expulsion, and suspension of an individual's membership in a nonprofit corporation.

N.C.G.S. § 55A-6-31 states:

> (a) No member of a corporation may be expelled or suspended, and no membership may be terminated or suspended, except in a manner that is fair and reasonable and is carried out in good faith.

> (b) Any proceeding challenging an expulsion, suspension, or termination shall be commenced within one year after the member receives notice of the expulsion, suspension, or termination.

> (c) A member who has been expelled or suspended may be liable to the corporation for dues, assessments, or fees as a result of obligations incurred or commitments made by the member prior to expulsion or suspension.

Emerson's Complaint alleges various deficiencies with the Board's termination, including: the failure to notify Emerson of the 7 January 2016 meeting, the lack of opportunity for Emerson to appear, hear, or present evidence at the meeting, and the alleged failure by the Board to hear from witnesses against Emerson at the meeting.

Our only precedent interpreting the requirement of N.C.G.S. § 55A-6-31(a) has involved First Amendment issues not argued here.[2] *See Tubiolo v. Abundant Life Church, Inc.*, 167 N.C. App. 324, 330, 605 S.E.2d 161, 165 (2004) ("A church's criteria

---

[2] Although our opinion in *Johnson v. Antioch United Holy Church, Inc.*, 214 N.C. App. 507, 509, 512-13, 714 S.E.2d 806, 809, 811 (2011) cited N.C.G.S. § 55A-6-31, we did not interpret the "fair and reasonable and . . . good faith" requirement of the statute in that case.

for membership and the manner in which membership is terminated are core ecclesiastical matters protected by the First and Fourteenth Amendments of the United States Constitution and section 13 of Article I of the Constitution of the State of North Carolina."). Because this case does not implicate core ecclesiastical matters and no other First Amendment arguments are before us, we proceed to consider Emerson's arguments regarding the procedural requirement of N.C.G.S. § 55A-6-31(a).

## A. Compensatory and Punitive Damages

To determine whether N.C.G.S. § 55A-6-31 includes participatory rights—the purported violation of which forms the basis of Emerson's claim for compensatory and punitive damages—we begin with the text of the statute. *See Elec. Supply Co. of Durham v. Swain Elec. Co.*, 328 N.C. 651, 656, 403 S.E.2d 291, 294 (1991) ("Legislative purpose is first ascertained from the plain words of the statute."). The terms "fair and reasonable and . . . good faith" do not have a statutory definition, so it is useful to look to the enactment of the statute to discover legislative intent. Our Supreme Court has interpreted legislative intent based on the similarity between model legislation submitted to the General Assembly and the statutory provisions ultimately adopted. *See Quick v. United Benefit Life Ins. Co.*, 287 N.C. 47, 51-52, 56, 213 S.E.2d 563, 565-66, 568-69 (1975) (considering the applicability of N.C.G.S. §

31A-3(3), in light of the Model Act upon which it was based, to a person convicted of involuntary manslaughter).

The General Assembly enacted the first version of the North Carolina Nonprofit Corporation Act in 1955 ("1955 Act"). *See* 1955 N.C. Sess. Laws 1239 (amended 1993). The 1955 Act borrowed many provisions from the A.B.A. Model Nonprofit Corporation Act ("Model Act"), which had been created in 1952. *See* Comm. on Corp. Laws of the Section of Corp., Banking, and Bus. Law of the A.B.A., *Model Non-Profit Corporation Act* (1952). The early versions of the Model Act and the 1955 Act lacked provisions describing procedures for member expulsion or termination. *See* 1955 N.C. Sess. Laws 1250-52 (defining membership and quorum, describing procedures to protect property rights of expelled members, and providing for meetings, notice of meetings, and voting); Comm. on Corp. Laws of the Section of Corp., Banking, and Bus. Law of the A.B.A, *supra,* at 8-11 (providing for membership, meetings, notice of meetings, voting, and quorum).

Both the 1955 Act and the Model Act have been amended over the years. The A.B.A. adopted the Revised Model Nonprofit Corporation Act in 1987 ("Revised Model Act"). *See* Subcomm. on the Model Nonprofit Corp. Law of the Bus. Law Section, A.B.A., *Revised Model Nonprofit Corporation Act* (1988). The General Assembly then amended the 1955 Act in 1993, which added many new provisions and re-codified the

North Carolina Nonprofit Corporation Act ("1993 Act") to mimic the Revised Model

Act in many ways. *See* 1993 N.C. Sess. Laws 1334.

For example, Section 6.20 of the Revised Model Act states:

> (a) A member may resign at any time.
>
> (b) The resignation of a member does not relieve the member from any obligations the member may have to the corporation as a result of obligations incurred or commitments made prior to resignation.

Subcomm. on the Model Nonprofit Corp. Law of the Bus. Law Section, *supra*, at 112-

13. N.C.G.S. § 55A-6-30 provides:

> (a) Any member may resign at any time.
>
> (b) The resignation of a member does not relieve the member from any obligations incurred or commitments made to the corporation prior to resignation.

N.C.G.S. § 55A-6-30; *see also* 1993 N.C. Sess. Laws 1359. Accordingly, the General

Assembly was aware of the Revised Model Act at the time of the enactment of

N.C.G.S. § 55A-6-31, which was added as a part of the 1993 amendments. *See* 1993

N.C. Sess. Laws 1359. The 1993 session laws included N.C.G.S. § 55A-6-21, the

language of which mimics § 6.21 in the Revised Model Act, although N.C.G.S. § 55A-

6-21 ultimately became effective on 1 July 1994 as N.C.G.S. § 55A-6-31. *See* N.C.G.S.

§ 55A-6-31; 1993 N.C. Sess. Laws 1359, 1428.

When the General Assembly adopts verbatim some provisions of a model code

and rejects others, we assume that the General Assembly consciously chose to author

its own alternate provisions. *See Newbold v. Globe Life Ins. Co.*, 50 N.C. App. 628, 633-34, 274 S.E.2d 905, 908-09 (1981) (concluding that the General Assembly's rejection of one model provision in light its verbatim adoption of other Model Act language "indicated a specific intent to reject the Model Act provision").

Here, although the General Assembly adopted some parts of the Revised Model Act's § 6.21 in N.C.G.S. § 55A-6-31, other parts of N.C.G.S. § 55A-6-31 deviated from the Revised Model Act's language. N.C.G.S. § 55A-6-31(a) provides: "No member of a corporation may be expelled or suspended, and no membership may be terminated or suspended, except in a manner that is fair and reasonable and is carried out in good faith."

In contrast, the Revised Model Act's § 6.21(b) provides:

> (b) A procedure is fair and reasonable when either:
>
> (1) The articles or bylaws set forth a procedure that provides:
> (i) not less than fifteen days prior written notice of the expulsion, suspension or termination and the reasons therefore; and
> (ii) an opportunity for the member to be heard, orally or in writing, not less than five days before the effective date of the expulsion, suspension or termination by a person or persons authorized to decide that the proposed expulsion, termination or suspension not take place; or
>
> (2) It is fair and reasonable taking into consideration all of the relevant facts and circumstances.

Subcomm. on the Model Nonprofit Corp. Law of the Bus. Law Section, *supra*, at 114. Omitting these procedural considerations, the General Assembly copied almost all the Revised Model Act's language for the remaining sections of N.C.G.S. § 55A-6-31. N.C.G.S. § 55A-6-31(b) and (c) are nearly identical to the Revised Model Act's § 6.21(d) and (e), respectively. *Compare* N.C.G.S. § 55A-6-31(b)-(c), *with* Subcomm. on the Model Nonprofit Corp. Law of the Bus. Law Section, *supra*, at 114.[3]

The General Assembly had the opportunity to codify a notice or hearing procedure within N.C.G.S. § 55A-6-31(a)—as expressly provided in the Revised Model Act, upon which N.C.G.S. § 55A-6-31 is based—and declined to do so. Therefore, the

---

[3]

| The General Assembly adopted the following language from the Revised Model Act: | The Revised Model Act provides: |
|---|---|
| (b) Any proceeding challenging an expulsion, suspension, or termination *shall* be commenced within one year after the *member receives notice* of the expulsion, suspension, or termination. | (d) Any proceeding challenging an expulsion, suspension or termination, *including a proceeding in which defective notice is alleged*, *must* be commenced within one year after the *effective date* of the expulsion, suspension or termination. |
| (c) A member who has been expelled or suspended may be liable to the corporation for dues, assessments, or fees as a result of obligations incurred or commitments made *by the member* prior to expulsion or suspension. | (e) A member who has been expelled or suspended may be liable to the corporation for dues, assessments or fees as a result of obligations incurred or commitments made prior to expulsion or suspension. |
| N.C.G.S. § 55A-6-31(b)-(c) (emphasis added). | Subcomm. on the Model Nonprofit Corp. Law of the Bus. Law Section, *supra*, at 114 (emphasis added). |
| N.C.G.S. § 55A-6-31(b) replaces "must" with "shall" and allows for members to challenge decisions within one year of notice. The italicized portion of N.C.G.S. § 55A-6-31(c) does not appear in § 6.21(e) of the Revised Model Act. | The italicized portion of § 6.21(d) does not appear in N.C.G.S. § 55A-6-31(b). |

General Assembly did not intend to provide for the Revised Model Act's notice or hearing procedures in N.C.G.S. § 55A-6-31(a). *See Newbold*, 50 N.C. App. at 633-34, 274 S.E.2d at 908-09. As a result, we decline to hold that prior notice or a participatory hearing is a per se requirement in all cases in order for a nonprofit corporation to comply with the "fair and reasonable and . . . good faith" requirement of N.C.G.S. § 55A-6-31(a).

Assuming *arguendo* that N.C.G.S. § 55A-6-31(a) as applied to the situation here required the Club to provide Emerson with prior notice and a hearing—the lack of which forms the basis of Emerson's claim for compensatory and punitive damages—Emerson failed to mitigate his damages allegedly resulting from the Club's failure to provide notice and a hearing. "Under the law in North Carolina, an injured plaintiff must exercise reasonable care and diligence to avoid or lessen the consequences of the defendant's wrong. If plaintiff fails to mitigate his damages, 'for any part of the loss incident to such failure, no recovery can be had.'" *Lloyd v. Norfolk S. Ry. Co.*, 231 N.C. App. 368, 371, 752 S.E.2d 704, 706 (2013) (quoting *Miller v. Miller*, 273 N.C. 228, 239, 160 S.E.2d 65, 73-74 (1968)). For example, when a plaintiff asserts a claim for wrongful discharge from at-will employment, we have considered the diligence with which a plaintiff seeks and accepts comparable employment. *See Blakeley v. Town of Taylortown*, 233 N.C. App. 441, 449-50, 756 S.E.2d 878, 884-85 (2014). However, "the failure to mitigate damages is *not* an absolute bar to all

recovery; rather, a plaintiff is barred from recovering for those losses which could have been prevented through the plaintiff's *reasonable efforts*." *Smith v. Childs*, 112 N.C. App. 672, 683, 437 S.E.2d 500, 507 (1993) (emphasis in original).

Here, Emerson acknowledged that the Club offered him "an opportunity to speak on [his] behalf," and Emerson chose not to attend this proposed meeting on 15 February 2016. Rather, Emerson claimed that the meeting was "a disingenuous effort to validate an invalid termination." Even assuming that the Club's failure to provide Emerson with notice and an opportunity to be heard violated N.C.G.S. § 55A-6-31(a), Emerson had an obligation to "lessen the consequences of the [the Club]'s wrong." *See Lloyd*, 231 N.C. App. at 371, 752 S.E.2d at 706. Under the circumstances, attending the meeting and contesting the termination decision from which Emerson's compensatory damages supposedly flow would have been reasonable. Emerson's failure to mitigate the damages that he claims resulted from the Club's alleged violation of N.C.G.S. § 55A-6-31(a) was unreasonable and bars his recovery here. *See Lloyd*, 231 N.C. App. at 371, 752 S.E.2d at 706; *Smith*, 112 N.C. App. at 683, 437 S.E.2d at 507. The trial court did not err in entering summary judgment on his claim for damages.

## B. Declaratory Judgment Act

Emerson's claims for declaratory judgments are rendered moot by our determination that Emerson failed to mitigate his alleged damages. A cause of action

may be moot under the Declaratory Judgment Act when a litigant seeks only a determination that some action was unlawful without seeking some form of relief from the allegedly unlawful conduct. *See Hindman v. Appalachian State Univ.*, 219 N.C. App. 527, 530, 723 S.E.2d 579, 581 (2012); *Citizens Addressing Reassignment & Educ., Inc. v. Wake Cty. Bd. of Educ.*, 182 N.C. App. 241, 246, 641 S.E.2d 824, 828 (2007). "[A] moot question is not within the scope of our Declaratory Judgment Act." *Morris v. Morris*, 245 N.C. 30, 36, 95 S.E.2d 110, 114 (1956). Unlike in federal courts, where mootness is a jurisdictional issue, our state courts decline to answer moot questions as an exercise of judicial restraint. *In re Peoples*, 296 N.C. 109, 147, 250 S.E.2d 890, 912 (1978). We apply a "traditional mootness analysis" to an action filed under the Declaratory Judgment Act. *Citizens*, 182 N.C. App. at 246, 641 S.E.2d at 827. A moot question "presents only an abstract proposition of law," and the resolution of a moot question is one that would have "no practical effect on the controversy." *Id.* at 246, 641 S.E.2d at 828.

In *Citizens*, we declined to decide an "abstract proposition of law" where plaintiffs sought a legal determination that a building was unlawful but did not seek closure of the building. *Id.* at 827-28. There, plaintiffs sought a declaratory judgment that the school board had violated N.C.G.S. § 115C-521(d) by entering into a lease agreement and arranging for a modular school to be placed on land not owned by the school board. *Id.* We held that the school was already operating and that a

- 14 -

declaration that the building was unlawful—absent some effort by the plaintiffs to close the school—"would have no practical effect on the controversy" and was thereby moot. *Id.*

Similarly, in *Hindman*, plaintiff professors at Appalachian State University ("University") sued their employer for its failure to pay the salary provided in plaintiffs' employment contracts. *Hindman*, 219 N.C. App. at 528, 723 S.E.2d at 579-80. The professors sued for breach of contract and for a declaratory judgment that the University had breached the employment contracts with the professors and other similarly situated faculty members. *Id.* at 528, 723 S.E.2d at 580. However, in *Hindman*, "[professors] did not seek any damages or any form of relief or redress for the alleged breach of contract." *Id.* We affirmed the trial court's grant of summary judgment in favor of the University because a legal determination that the University had breached the employment contract would not "have any practical effect." *Id.* at 530, 723 S.E.2d at 581 (quoting *Citizens*, 182 N.C. App. at 246, 641 S.E.2d at 827). We noted that the "breach was in the past, is not alleged to be likely to recur, is the only redress [professors] seek, and [professors] are barred from bringing further action on this same claim or issue." *Id.*

Here, Emerson's first claim for relief in his Complaint states that "Emerson is entitled to a declaratory judgment relating to the status of his membership in [the Club]." Emerson's second claim for relief states that "Emerson is entitled to a

declaratory judgment as to whether or not the Board can now conduct a curative hearing in a manner that is fair and reasonable and carried out in good faith, having previously terminated his membership in violation of [N.C.G.S. § 55A-6-31(a)]."

Were we to issue a judgment stating that the manner of Emerson's membership termination fell short of the "fair and reasonable and . . . good faith" requirement in N.C.G.S. § 55A-6-31(a) or that post-termination hearings are impermissible under N.C.G.S. § 55A-6-31(a), such determinations would have no practical effect in this case. Unlike *Hindman*, where the plaintiff professors sought a declaratory judgment without any other remedy or damages, Emerson does seek compensatory and punitive damages alongside the declaratory judgments. *See Hindman*, 219 N.C. App. at 528, 723 S.E.2d at 580. However, as discussed above, Emerson failed to mitigate his purported damages and is therefore barred from recovery. As a result, the questions about which Emerson sought a declaratory judgment are moot notwithstanding his claim for damages.

Emerson seeks declaratory relief with respect to the *manner* of his termination from the Club, and such a declaration would not alter the rights or obligations of the parties.[4] Similar to *Citizens* and *Hindman*, it may be possible here to identify a

---

[4] Emerson's Complaint did not seek injunctive relief in the form of reinstated membership. Had Emerson sought a mandatory injunction requiring reinstatement, the declaratory judgment may not have been moot because this remedy would constitute further relief, which was lacking in *Citizens* and *Hindman*. However, without deciding issues not present, we observe that the question of judicial

violation of N.C.G.S. § 55A-6-31(a), but the proposition would be abstract or academic, like a judgment that a school building is unlawful or that a contract has been breached when no further relief is sought. *See Hindman*, 219 N.C. App. at 530-31, 723 S.E.2d at 581; *Citizens*, 182 N.C. App. at 246, 641 S.E.2d at 827.

## CONCLUSION

Emerson failed to mitigate his alleged damages and is barred from recovering compensatory and punitive damages for the Club's alleged violation of N.C.G.S. § 55A-6-31(a). Accordingly, the issues presented in Emerson's requests for declaratory judgments are moot, as a resolution of these questions would not have any practical effect on the controversy, and we decline to address them. The trial court's grant of summary judgment in favor of the Club on each of Emerson's claims is affirmed.

AFFIRMED.

Judge CALABRIA concurs.

Chief Judge McGEE concurs in result with separate opinion.

---

reinstatement of membership in a nonprofit corporation may implicate a nonprofit corporation's First Amendment associational rights. *See Boy Scouts of Am. v. Dale*, 530 U.S. 640, 647-48, 120 S. Ct. 2446, 2451 (2000) ("Government actions that may unconstitutionally burden [the right to associate] may take many forms, one of which is 'intrusion into the internal structure or affairs of an association' like a 'regulation that forces the group to accept members it does not desire.'") (quoting *Roberts v. U.S. Jaycees*, 468 U.S. 609, 623, 104 S. Ct. 3244, 3252 (1984)).

17-1149 – *Emerson v. Cape Fear Country Club, Inc.*

McGEE, Chief Judge, concurring in result with separate opinion.

I agree the trial court properly granted summary judgment in favor of Defendant. However, I write separately to respectfully express my view that this Court's analysis should be limited to the issues specifically raised by Plaintiff's appeal. It is sufficient to conclude Plaintiff has failed to show that N.C.G.S. § 55A-6-31(a) requires prior notice and a hearing *as a matter of law.*

Plaintiff asserts in his appellate brief that the termination of his club membership (1) was neither fair and reasonable nor executed in good faith, as required by N.C.G.S. § 55A-6-31(a); and (2) was inconsistent with various other sources of non-binding authority. Plaintiff begins by noting the general proposition that

> [t]o determine whether the established facts [show a] termination [was] in a manner that [was] fair and reasonable and [was] carried out in good faith, this Court is left to "[t]he first maxim of statutory construction [which] is to ascertain the intent of the legislature. To do this[,] this Court should consider the statute as a whole, the spirit of the statute, the evils it is designed to remedy, and what the statute seeks to accomplish."

(quoting *State v. Johnson*, 298 N.C. 47, 56, 257 S.E.2d 597, 606 (1979)). Plaintiff then states that, "[i]n doing so, [this] Court may look to other authorities of import, including industry standards, decisions from other jurisdictions, and other recognized authorities."

By its plain language, N.C.G.S. § 55A-6-31(a) does not provide that a termination or suspension of membership will *only* be deemed "fair and reasonable" and "carried out in good faith" *if* the member subject to termination or suspension is afforded prior notice and an opportunity to be heard. Nevertheless, Plaintiff asks this Court to hold that Defendant violated N.C.G.S. § 55A-6-31(a) *as a matter of law* by not providing him "notice of the charges against him and a hearing or an opportunity to respond to those charges prior to termination [of his membership][.]" "'The primary rule of statutory construction is that the intent of the [L]egislature controls the interpretation of a statute.'" *Belk v. Belk*, 221 N.C. App. 1, 9, 728 S.E.2d 356, 361 (2012) (quoting *Tellado v. Ti-Caro Corp.*, 119 N.C. App. 529, 533, 459 S.E.2d 27, 30 (1995)). "In ascertaining the legislative intent courts should consider the language of the statute, the spirit of the statute, and what it seeks to accomplish. Other indicia considered by this Court in determining legislative intent are the legislative history of an act and the circumstances surrounding its adoption[.]" *Carter-Hubbard Pub'lg Co. v. WRMC Hosp. Operating Corp.*, 178 N.C. App. 621, 625, 633 S.E.2d 682, 685 (2006) (citations and quotation marks omitted).

Notably, in his appellate brief, Plaintiff offers no substantive discussion of "the text, structure, and policy of [N.C.G.S. § 55A-6-31(a)]," the statute's legislative history, or the purpose of our General Assembly in enacting it. *See Electric Supply Co. v. Swain Electrical Co.*, 328 N.C. 651, 656, 403 S.E.2d 291, 295 (1991). Plaintiff

2

asserts various public policy arguments why corporations *should be* required to provide prior notice and an opportunity to be heard before suspending or terminating a membership, but "these arguments are more properly directed to the [L]egislature. The sole issue before this Court is one of statutory construction," s*ee State v. Anthony*, 351 N.C. 611, 618, 528 S.E.2d 321, 325 (2000), and we are not persuaded that N.C.G.S. § 55A-6-31(a) implicitly imposes *per se* notice and hearing requirements.

In support of his argument that prior notice and an opportunity to be heard are mandatory under N.C.G.S. § 55A-6-31(a), Plaintiff relies *entirely* upon the following sources of authority: (1) guidelines and recommendations published by the Club Managers Association, a professional trade association; (2) case law from other jurisdictions, interpreting and applying non-North Carolina law and legal principles; (3) Robert's Rules of Order; and (4) statements purportedly made by attorneys who were members of Defendant's Board during internal discussions about Plaintiff's termination. These sources are insufficient to support a violation of N.C.G.S. § 55A-6-31(a). Plaintiff has not argued, for example, that the General Assembly intended N.C.G.S. § 55A-6-31(a) to reflect or incorporate the "industry standards" he cites. Defendant's alleged failure to follow Robert's Rules of Order, and the internal discussions of its own attorneys regarding the termination of Plaintiff's membership, likewise lack relevance to the question of statutory construction. Plaintiff does not explain why Defendant's alleged violation of Robert's Rules of Order constituted a

3

violation of N.C.G.S. § 55A-6-31(a); Plaintiff argues only that Defendant "failed to follow its [own] requirements or guidelines." Similarly, the opinions expressed by attorneys serving on Defendant's Board that, prior to the termination of Plaintiff"s membership, "there should be some due process[,]" and that the Board "may want to allow [Plaintiff] an opportunity to . . . speak on his actions[,]" do not establish that such measures were *mandated by N.C.G.S. § 55A-6-31(a)*, or that the Board violated the statute by deciding not to follow those recommendations. Finally, while this Court may consider the non-binding decisions of other jurisdictions if we find such authority "instructive[,]" *see Carolina Power & Light Co. v. Employment Sec. Comm'n of N.C.*, 363 N.C. 562, 569, 681 S.E.2d 776, 780 (2009), the out-of-state and federal cases cited by Plaintiff "have very little persuasive weight" here, in light of various factual, procedural, and legal distinctions among the cases. *See Wal-Mart Stores E., Inc. v. Hinton*, 197 N.C. App. 30, 44, 676 S.E.2d 634, 645 (2009).

Plaintiff has failed to identify any controlling or persuasive authority to support his proposed construction of N.C.G.S. § 55A-6-31(a) as imposing *per se* notice and hearing requirements and, as discussed by the majority, aspects of the statute's legislative history suggest our General Assembly intentionally omitted *per se* notice and hearing requirements from the plain language of the statute. This concludes our inquiry. It is unnecessary to address Plaintiff's alleged failure to mitigate damages, since Plaintiff's claim for damages is premised upon a violation of N.C.G.S. § 55A-6-

4

31(a) and, absent a statutory violation, those claims necessarily fail. It is also important to note that our holding in the present case does not *preclude* a finding that, under the facts and circumstances of a particular case, a lack of prior notice and/or hearing could violate the "fair and reasonable" and "good faith" language in N.C.G.S. § 55A-6-31(a). Plaintiff has simply failed to persuade this Court that the statute mandates prior notice and a hearing in *all* instances.