BERGER, Judge.
 

 Michael Master ("Mr. Master") and Virginia Master ("Mrs. Master") (collectively, "Plaintiffs") sued Country Club of Landfall (the "Club") for terminating Plaintiffs' country club membership. Plaintiffs appeal from the trial court's denial of their motion for partial summary judgment and grant of the Club's motion for summary judgment, which dismissed all of Plaintiffs' claims with prejudice. Plaintiffs contend that the trial court erred in granting summary judgment in the Club's favor because the Club failed to follow its own internal rules and provide Plaintiffs with adequate notice and an opportunity to be heard before an impartial panel. We disagree and affirm the trial court.
 

 Factual and Procedural Background
 

 The Club is a private golf club, organized as a nonprofit corporation under North Carolina law, with the majority of its members residing and owning property within the Landfall community. Plaintiffs purchased property in the Landfall community because of the Club and became members in 2013. Plaintiffs acknowledged that they held a single, family membership rather than two individual memberships and that they were subject to the Club's governing bylaws (the "Bylaws") and rules and regulations (the "Rules & Regulations").
 

 According to the Club's Bylaws, when spouses jointly own a family club membership, "[t]he action of either spouse with respect to the Membership shall be binding on the other" and the Club is not required to "notify or obtain the consent of both spouses." Section 3.12 of the Bylaws, states, in relevant part, that the Club's Board of Directors (the "Board") "may institute disciplinary action against any Member ... for Good Cause." "Good Cause" is defined as
 

 conduct by a Member ... which the Board or its designee determines, in its sole discretion, to be detrimental to the interests, welfare, safety, well-being and harmony of the Club, its Members or employees; breach of the Club Rules; harassment or abuse, verbal or physical, of Club personnel or other person using the Club Facilities; and such other reasons as the Board shall determine to constitute Good Cause.
 

 The Bylaws further state that the Board
 

 shall establish in its Rules and Regulations a procedure for disciplinary action which shall include a written notice to the Member ... setting forth the charges, provisions for a fair hearing by the Board or a Committee appointed by the Board, and a written notice of the Board's final determination. The Board upon a vote of at least sixty percent (60%) may impose such sanctions as it deems appropriate, including, but not limited to, monetary fines, reprimand, temporary suspension of privileges, or termination of Memberships.
 

 The Club's Rules & Regulations dictate the procedural rules for conducting a disciplinary action against a member. Article VII of the Rules & Regulations state, in relevant part:
 

 7.1 The General Manager and the staff are responsible to the Board of Directors for implementing and administrating the Club Rules & Regulations and reporting rules violations to the Rules and Members Committee [ (the "R & M Committee") ] as appropriate. The [R & M] Committee shall investigate each violation of Club Rules & Regulations presented to it by the Club staff or a Member.
 

 7.2 If there is sufficient evidence of a violation of Club Rules & Regulations, and/or By-Laws, the [R & M] Committee may, by majority vote, issue a warning
 
 *118
 
 letter to the member or recommend to the Board such appropriate disciplinary action as it sees fit, including but not limited to ... termination of the offending Member's membership at the Club.
 

 7.3 Should the [R & M] Committee recommend to the President of the Board any one or more of the following disciplinary actions: ... [including] termination of the offending Member's membership at the Club; or any other disciplinary action, other than a warning letter, a Hearing Panel shall be formed to consider the report and recommendations of the [R & M] Committee; hold a hearing to receive both oral and written evidence and comment from the offending member; and render a final decision on the appropriate disciplinary action the offending member will receive. The Hearing Panel shall be composed of four (4) members of the Board appointed by the President and three (3) members of the [R & M] Committee appointed by the Committee Chairman. The President shall appoint the Chairman of the Hearing Panel from one of the Board members appointed to the Panel. The Chairman shall, as soon as practicable, notify the offending member, by mail or email, of the alleged violations to be considered by the Hearing Panel and the date of the hearing before the Hearing Panel when he or she may present both oral and written evidence and comment regarding the alleged violations. After considering the report and recommendations of the [R & M] Committee; the evidence and comment from the offending member; and any and all other evidence which the Hearing Panel may consider relevant, the Hearing Panel shall by a vote of at least 60% approval impose such disciplinary actions as it deems appropriate. The decision of the Hearing Panel is final and the President shall provide written notice of the decision to the member.
 

 While the R & M Committee members were selected from the Club's active members, no R & M Committee member simultaneously served as both a member of the Board and R & M Committee at the relevant time.
 

 When read together, it appears that Section 3.12 of the Bylaws and Section 7.3 of the Rules & Regulations seems to conflict. Section 3.12 of the Bylaws state that the Board makes the final disciplinary determination, while Section 7.3 of the Rules & Regulations dictate that a disciplinary "decision of the Hearing Panel is final." However, the parties agree that later-adopted Rules & Regulations, which substituted the Hearing Panel for the Board as the final arbiter in disciplinary decisions, governed.
 

 In addition to the Club's Bylaws and Rules & Regulations, Plaintiffs contend that the Club was also governed by the R & M Committee's Standard Operating Procedures (the "Operating Procedures"). However, these Operating Procedures were never approved by the Board or made a part of the governing documents of the Club.
 

 In the fall of 2014, the Board decided to make significant changes to the Bylaws, some of which would monetarily affect certain members. From February 14, 2015 until the proposed changes were ultimately defeated on April 2, 2015, Mr. Master sent a series of emails to other club members, arguing the proposed changes were unethical and immoral.
 

 After several club members complained to the Board and the Club's General Manager regarding Mr. Master's emails, his actions were referred to the Club's R & M Committee. According to the affidavit of Ron Conway ("Conway"), who was a member of the Board and served as the liaison between the Board and the R & M Committee, the R & M Committee reviewed Mr. Master's emails during their March 2015 meeting and concluded that
 

 Mr. Master had engaged in a pattern of sending emails using nasty, insulting, mean-spirited and inflammatory language that was calculated to create confrontation and turmoil between Club members and to undermine the membership's trust in its Board.... [and] that Mr. Master's references to Hitler, Barabbas, Jesus and slavery were insulting and inappropriate and had no place within the Club.
 

 At the conclusion of their March 2015 meeting, the R & M Committee communicated to the Club's President, Mike Giblin ("President
 
 *119
 
 Giblin") their unanimous recommendation to terminate Mr. Master's family membership.
 

 Based on this recommendation and in accordance with the Club's Rules & Regulation, President Giblin referred the matter to a hearing panel (the "Hearing Panel"). He also appointed members to the Hearing Panel in accordance with the Club's Rules & Regulations.
 

 On April 2, 2015, Conway sent a letter to Mr. Master informing him that several members had complained to the Board regarding Mr. Master's emails. Conway's letter claimed that Mr. Master's emails and conduct were "detrimental to the well-being and harmony of the Club to an egregious degree," and informed Mr. Master that a hearing would be held on April 15, 2015 to assess the matter and impose any applicable sanctions. The letter also invited Mr. Master to present evidence to defend himself at the hearing.
 

 Mr. Master requested the hearing be rescheduled for personal reasons, and the date was changed to May 25, 2015. However, on April 28, 2015, Conway notified Mr. Master by mail and email that his hearing date would have to be rescheduled again to May 8, 2015. Mr. Master claimed that he first learned that the May 8, 2015 hearing was rescheduled on May 5, 2015.
 

 Plaintiffs did not attend the May 8, 2015 hearing, but their attorney did attend. After stating that he was prepared to move forward with the hearing in Plaintiffs' absence, Plaintiffs' counsel did not ask any members to recuse themselves, but argued for suspension of privileges rather than termination of membership. The Hearing Panel voted to terminate Mr. Master's family membership, and Mr. Master was mailed a letter notifying him of the decision.
 

 Plaintiffs brought this action against the Club on October 12, 2015, claiming breach of contract and seeking a declaratory judgment. The Club filed its answer along with a motion to dismiss on December 16, 2015. On July 6, 2017, Plaintiffs moved for partial summary judgment. The Club filed an amended answer and moved for summary judgment to dismiss all claims against the Club. After hearing arguments on the parties' cross-motions for summary judgment, the trial court entered an order on August 16, 2017, denying Plaintiffs' motion and granting summary judgment in favor of the Club. Plaintiffs timely appealed.
 

 Standard of Review
 

 "We review a trial court's order granting or denying summary judgment de novo."
 
 Variety Wholesalers, Inc. v. Salem Logistics Traffic Services., LLC
 
 ,
 
 365 N.C. 520
 
 , 523,
 
 723 S.E.2d 744
 
 , 747 (2012) (citation omitted). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. R. Civ. P. 56(c). "A genuine issue of material fact has been defined as one in which the facts alleged are such as to constitute a legal defense or are of such nature as to affect the result of the action...."
 
 Smith v. Smith
 
 ,
 
 65 N.C. App. 139
 
 , 142,
 
 308 S.E.2d 504
 
 , 506 (1983) (citation and quotation marks omitted). "All facts asserted by the adverse party are taken as true, and their inferences must be viewed in the light most favorable to that party."
 
 Variety Wholesalers, Inc
 
 .,
 
 365 N.C. at 523
 
 ,
 
 723 S.E.2d at 747
 
 (citation and quotation marks omitted).
 

 Analysis
 

 Plaintiffs argue that the trial court erred in granting summary judgment in the Club's favor because the Club failed to follow its own internal rules and provide Plaintiffs with adequate notice and an opportunity to be heard before an impartial panel. We disagree.
 

 North Carolina's Nonprofit Corporation Act states that "[n]o member of a corporation may be expelled or suspended, and no membership may be terminated or suspended, except in a manner that is fair and reasonable and is carried out in good faith." N.C. Gen. Stat. § 55A-6-31(a) (2017). However, Section 55A-6-31(a)"does not require a country club's board of directors, in all situations, to provide a member with prior notice and an opportunity to be heard regarding the termination of a membership."
 

 *120
 

 Emerson v. Cape Fear Country Club
 
 ,
 
 Inc.
 
 , --- N.C. App. ----, ----,
 
 817 S.E.2d 402
 
 , 404 (2018).
 

 Moreover, "[i]t is well established that courts will not interfere with the internal affairs of voluntary associations. A court, therefore, will not determine, as a matter of its own judgment, whether a member should have been suspended or expelled."
 
 Wilson Realty & Constr., Inc. v. Asheboro-Randolph Bd. of Realtors, Inc.
 
 ,
 
 134 N.C. App. 468
 
 , 470,
 
 518 S.E.2d 28
 
 , 30 (1999) (
 
 purgandum
 

 [1]
 
 ). Thus, "when a plaintiff challenges a voluntary organization's decision, the case will be dismissed as non-justiciable unless the plaintiff alleges facts showing (i) the decision was inconsistent with due process, or (ii) the organization engaged in arbitrariness, fraud, or collusion."
 
 McAdoo v. Univ. of N.C. at Chapel Hill
 
 ,
 
 225 N.C. App. 50
 
 , 72,
 
 736 S.E.2d 811
 
 , 825 (2013) (citation and quotation marks omitted). Here, Plaintiffs have not argued that the Club's decision to terminate their family membership was arbitrary, fraudulent, or collusive. Therefore, our review is limited to whether the Club's decision was inconsistent with due process.
 

 "Private voluntary organizations are
 
 not
 
 required to provide their members with the full substantive and procedural due process protections afforded under the United States and North Carolina constitutions."
 
 McAdoo
 
 ,
 
 225 N.C. App. at 72
 
 ,
 
 736 S.E.2d at 825-26
 
 (emphasis added);
 
 see also
 

 NCAA v. Tarkanian
 
 ,
 
 488 U.S. 179
 
 , 191,
 
 109 S.Ct. 454
 
 ,
 
 102 L.Ed.2d 469
 
 (1988) ("Embedded in our Fourteenth Amendment jurisprudence is a dichotomy between state action, which is subject to scrutiny under the Amendment's Due Process Clause, and private conduct, against which the Amendment affords no shield, no matter how unfair that conduct may be." (citation omitted) ). Rather, private associations are usually only required to "(i) follow their own internal rules and procedures, and (ii) adhere to principles of fundamental fairness by providing notice and an opportunity to be heard."
 
 McAdoo
 
 ,
 
 225 N.C. App. at 72
 
 ,
 
 736 S.E.2d at 826
 
 (citations and quotation marks omitted).
 

 First, to determine whether a private association followed its own internal rules and procedures, courts look to the association's "duly adopted laws."
 
 Id.
 
 at 71,
 
 736 S.E.2d at 825
 
 . Because "the charter and bylaws of an association may constitute a contract between the organization and its members wherein members are deemed to have consented to all reasonable regulations and rules of the organization," traditional rules of contract interpretation apply when assessing whether the voluntary association followed its own internal rules and procedures.
 
 Gaston Bd. of Realtors, Inc. v. Harrison
 
 ,
 
 311 N.C. 230
 
 , 237,
 
 316 S.E.2d 59
 
 , 63 (1984). "[W]hen the language of a contract is clear and unambiguous, the court must interpret the contract as written...."
 
 Root v. Allstate Ins. Co
 
 .,
 
 272 N.C. 580
 
 , 583,
 
 158 S.E.2d 829
 
 , 832 (1968) (citation omitted). "The heart of a contract is the intention of the parties," so the trial court must "seek to determine the intention of the parties as shown by the whole written instrument."
 
 Id
 
 . (citation and quotation marks omitted).
 

 Second, when assessing whether the voluntary association "adhere[d] to principles of fundamental fairness by providing notice and an opportunity to be heard," it is vital to remember that "[p]rivate voluntary organizations are
 
 not
 
 required to provide their members with the full substantive and procedural due process protections afforded under the United States and North Carolina constitutions."
 
 McAdoo
 
 ,
 
 225 N.C. App. at 72
 
 ,
 
 736 S.E.2d at 825-26
 
 (emphasis added).
 

 As previously discussed, this Court recently "decline[d] to hold that prior notice or a participatory hearing is a per se requirement in all cases in order for a nonprofit corporation to comply with the 'fair and reasonable and ... good faith' requirement of N.C.G.S. § 55A-6-31(a)."
 

 *121
 

 Emerson
 
 , --- N.C. App. at ----,
 
 817 S.E.2d at 408
 
 . However, prior notice and an opportunity to be heard
 
 may
 
 be required if set forth in the organization's governing documents.
 

 Moreover, while it is true that "[a]n unbiased, impartial decision-maker is essential" when full due process protections apply,
 
 Crump v. Board of Education of Hickory Administrative School Unit
 
 ,
 
 326 N.C. 603
 
 , 615,
 
 392 S.E.2d 579
 
 , 585 (1990), it is not always necessary for private associations to utilize an impartial decision maker when making disciplinary determinations. Again, the terms of the organization's governing documents control.
 

 Here, Plaintiffs first argue that the record evidence demonstrated the Club's failure to follow several provisions of the Bylaws and Rules & Regulations. However, our review of the record and the Club's governing documents reveal that the Club properly followed its Bylaws and Rules & Regulations. Moreover, Plaintiffs contend that the Club did not adhere to the disciplinary process outlined in the R & M Committee's Operating Procedures. However, because these Operating Procedures were never approved by the Board or made a part of the governing documents of the Club, the Operating Procedures were not duly adopted rules. As a result, the Club was not required to comport with the R & M Committee's Operating Procedures here.
 

 Plaintiffs next argue that the record evidence demonstrates that Plaintiffs were entitled to, but did not receive adequate notice and an opportunity to be heard by an impartial tribunal.
 

 The plain, clear and unambiguous language of the Club's Rules & Regulations expressly entitled Plaintiffs to written notice and an opportunity to be heard. Neither the Club's Bylaws nor Rules & Regulations state that disciplinary actions would be heard by an impartial tribunal. The Club's Rules & Regulations plainly state that disciplinary matters will be determined by a Hearing Panel consisting of four members from the Board and three members from the R & M Committee. There is no provision in the Club's governing documents that would guarantee an impartial, third-party tribunal to determine internal disciplinary matters.
 

 We conclude that the Club complied with the notice and hearing requirements of the Rules & Regulations when it assessed Mr. Master's disciplinary matter. The undisputed evidence illustrates that the Club held a hearing on May 8, 2015, in which the Plaintiffs were represented by their attorney. Although Plaintiffs' counsel did not present any evidence and Plaintiffs did not personally attend the hearing, the Club provided them with the opportunity to do so.
 

 Additionally, Plaintiffs do not contest that Conway, on behalf of the Club, sent Mr. Master a letter on April 2, 2015, notifying him of his alleged violations and hearing date. That letter explained to Mr. Master that several members had complained to the Board regarding the series of emails that Mr. Master had sent to hundreds of club members; identified Mr. Master's conduct as "detrimental to the well-being and harmony of the Club to an egregious degree"; informed Mr. Master that a hearing would be held on April 15, 2015 to assess the matter and impose any applicable sanctions; and invited Mr. Master to present evidence to defend himself against his alleged violations. In response to scheduling conflicts, the Club rescheduled the hearing to May 8, 2015, and Conway communicated this change to Mr. Master by mail and email.
 

 Although the hearing was rescheduled twice, this fact alone does not impact our conclusion that Mr. Master received proper notice. The Club's governing documents only require members to be notified at some unspecified time prior to the hearing, and Mr. Master received notice about the rescheduled hearing prior to May 8, 2015. Therefore, the Club properly notified Mr. Master about his alleged violations and provided an opportunity to present evidence.
 

 Moreover, the Club's Bylaws dictate that when spouses jointly own a single, family club membership, "[t]he action of either spouse with respect to the Membership shall be binding on the other" and the Club is not required to "notify or obtain the consent of both spouses." Therefore, Plaintiffs were properly notified as the Club was not obligated
 
 *122
 
 to also individually notify Mrs. Master regarding her husband's alleged violations and hearing date.
 

 Because the Club adhered to its own internal rules and provided Plaintiffs with prior notice and an opportunity to be heard, "there is no justification for judicial intervention" on Plaintiffs' behalf.
 
 Arendas ex rel. Arendas v. N.C. High Sch. Athletic. Ass'n Inc.
 
 ,
 
 217 N.C. App. 172
 
 , 174,
 
 718 S.E.2d 198
 
 , 200 (2011). Thus, when this undisputed evidence is viewed in the light most favorable to Plaintiffs, we conclude there is no genuine issue of material fact.
 

 Conclusion
 

 We affirm the trial court's grant of summary judgment in the Club's favor and denial of Plaintiffs' motion for partial summary judgment.
 

 AFFIRMED.
 

 Judges TYSON and INMAN concur.
 

 [1]
 

 Our shortening of the Latin phrase "
 
 Lex purgandum est.
 
 " This phrase, which roughly translates "that which is superfluous must be removed from the law," was used by Dr. Martin Luther during the Heidelberg Disputation on April 26, 1518 in which Dr. Luther elaborated on his theology of sovereign grace. Here, we use
 
 purgandum
 
 to simply mean that there has been the removal of superfluous items, such as quotation marks, ellipses, brackets, citations, and the like, for ease of reading.