IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA15-689

Filed: 1 November 2016

Alamance County, No. 14 CVS 404

WELLS FARGO BANK, N.A. a/k/a Wachovia Mortgage, a division of Wells Fargo Bank, N.A., and f/k/a Wachovia Mortgage, FSB f/k/a World Savings Bank, FSB, Plaintiff,

v.

AMERICAN NATIONAL BANK AND TRUST COMPANY, successor by merger to MidCarolina Bank, Defendant.

Appeal by defendant from order entered 27 August 2014 by Judge Michael R. Morgan in Alamance County Superior Court. Heard in the Court of Appeals 19 November 2015.

*Roberson Haworth & Reese, P.L.L.C., by Alan B. Powell, Christopher C. Finan, and Matthew A.L. Anderson, for plaintiff-appellee.*

*Clement Wheatley, by Darren W. Bentley, for defendant-appellant.*

DIETZ, Judge.

This case presents an issue of first impression involving N.C. Gen. Stat. § 45–36.6(b), a statute that permits rescission of a notice of satisfaction for a security instrument if that instrument was "erroneously satisfied."

The parties have two competing interpretations of the phrase "erroneously satisfied." Wells Fargo argues that "erroneously" means precisely what it says—any

error or mistake of any kind. American National argues that the statute applies only if the error was believing that the underlying secured obligation had been paid off when in fact it had not.

The legislature may have intended for American National's interpretation to apply but, as explained below, the plain language of the statute and long-standing canons of statutory construction compel us to accept Wells Fargo's interpretation. Of particular importance, this statute originally was taken directly from a model uniform law and formerly said precisely what American National claims it ought to mean here. But several years after adopting that uniform law, the legislature amended the statute and removed the language supporting the interpretation urged by American National. Under well-settled canons of statutory construction, we must conclude that this change had meaning. *Childers v. Parker's, Inc.*, 274 N.C. 256, 260, 162 S.E.2d 481, 484 (1968).

Accordingly, we are constrained to hold that an instrument "erroneously satisfied of record" under N.C. Gen. Stat. § 45–36.6(b) is one for which the certificate of satisfaction was erroneously or mistakenly filed for *any* reason, even a unilateral mistake having nothing to do with whether the underlying obligation actually was fully paid off.

Although we agree with Wells Fargo's interpretation of the statute, we do not agree that the record therefore supports entry of summary judgment in Wells Fargo's

favor. Wells Fargo forecast evidence proving that its filing of the satisfaction was a mistake, including testimony from its Rule 30(b)(6) deponent. But American National forecast other, conflicting testimony and evidence which suggests Wells Fargo intended to file the satisfaction because it believed the underlying loan had been paid off. A jury must resolve this fact dispute. We thus reverse the entry of summary judgment and remand for further proceedings.

**Facts and Procedural History**

On 6 July 1999, homeowners Theodore and Chryssoula Bakatsias obtained financing and bought a home in Burlington. On 17 March 2004, the homeowners obtained an $88,000 home equity line of credit from American National Bank[1] secured by a deed of trust on the property.

On 30 August 2004, the homeowners refinanced their original loan on the property with a $350,000 loan from Wells Fargo secured by a deed of trust. Shortly after recording that 2004 deed of trust, the homeowners and Wells Fargo entered into a subordination agreement with American National providing that the 2004 loan would have priority over the home equity loan.

On 20 November 2006, the homeowners again refinanced their home loan through Wells Fargo. The parties prepared and executed a new deed of trust that secured this new loan. Neither the note nor the new deed of trust referenced the

---

[1] For ease of reading, this opinion will refer exclusively to American National and Wells Fargo, although some of the financing was done by their respective predecessors-in-interest.

existing 2004 deed of trust. The homeowners used a portion of the 2006 loan sum to immediately pay off the remaining balance of the 2004 loan. Wells Fargo did not obtain a subordination agreement with American National with respect to the 2006 refinancing, as it did in 2004.

On 27 December 2006, Wells Fargo recorded a certificate of satisfaction, which certified that the debt secured by the 2004 deed of trust was fully satisfied and that the 2004 deed of trust was accordingly cancelled. Because Wells Fargo never obtained a subordination agreement with American National concerning the 2006 loan, the effect of cancelling the 2004 deed of trust was to elevate the home equity line of credit from American National to first priority, ahead of Wells Fargo's 2006 home loan. Wells Fargo contends that it erroneously filed its certificate of satisfaction and that it never intended to elevate American National's home equity line of credit to first priority position. Thus, roughly six years later, on 27 August 2013, when Wells Fargo discovered the certificate of satisfaction and recognized its unintended effect, it recorded a document of rescission under N.C. Gen. Stat. § 45–36.6 to rescind the certificate of satisfaction and reinstate Wells Fargo's 2004 deed of trust to first priority.

Wells Fargo later sought a declaratory judgment that its rescission was effective and that it therefore "holds a valid and enforceable, first-priority lien" on the property. American National counterclaimed, alleging that "but for the wrongfully

filed Rescission, American National holds a valid enforceable first-priority lien" on the property, and sought a declaration that the rescission was ineffective.

Wells Fargo moved for judgment on the pleadings and American National moved for summary judgment. On 27 August 2014, following a hearing, the trial court filed an order granting summary judgment for Wells Fargo, declaring that it held "a valid and enforceable, first-priority lien upon the entire fee simple interest" in the subject property, and dismissing American National's counterclaim. American National timely appealed.[2]

## Analysis

### I. The meaning of "erroneously satisfied"

The crux of this case is the meaning of the phrase "[i]f . . . a security instrument is erroneously satisfied of record" in Section 45–36.6(b) of the General Statutes. That statutory provision, originally taken from a portion of the Uniform Residential Mortgage Satisfaction Act, allows a lender to undo the filing of a satisfaction for a security instrument and reinstate the cancelled security instrument with its original priority intact.

The parties assert two competing interpretations of the statute. Wells Fargo argues that "[t]he statute makes it clear that when a secured creditor determines that a unilateral mistake (of any kind) has resulted in the erroneous cancellation of a

---

[2] The trial court substituted DR Acquisitions, LLC—the successor-in-interest to American National Bank—as the defendant in this action on 18 December 2014.

security instrument (for any reason and at any time), that secured creditor may file a verified document of rescission to remedy that mistake." Under this interpretation, Wells Fargo need only establish that it filed the certificate of satisfaction and that the filing was, for any reason, a mistake. If so, then it may rescind the filing under the statute's plain language.

American National, by contrast, argues that the statute does not permit rescission for *any* mistake, but only the erroneous recording of satisfaction for an obligation that was not actually satisfied. Under this interpretation, Wells Fargo properly could rescind its certificate of satisfaction only if it could show that, after the homeowners paid off the 2004 loan with the 2006 refinancing, there was still some outstanding debt secured by the 2004 deed of trust.

The legislature may have intended for American National's interpretation to apply, but the plain language of the statute and long-standing canons of statutory construction compel us to accept Wells Fargo's interpretation.

As with all questions of statutory construction, we begin with the statute's plain language. The relevant statutory language is as follows:

> If a release is recorded in error or a security instrument is erroneously satisfied of record, then the secured creditor or the person who caused the release to be recorded in error or the security instrument to be erroneously satisfied of record may execute and record a document of rescission. The document of rescission must be duly acknowledged before an officer authorized to make acknowledgments. Upon recording, the document of rescission either (i) rescinds a release that was recorded in error

and deprives the release of any effect or (ii) rescinds the erroneous satisfaction of record of the security instrument and reinstates the security instrument.

N.C. Gen. Stat. § 45–36.6(b).

The disputed language is the phrase "if . . . a security instrument is erroneously satisfied of record" and, in particular, the meaning of the word "erroneously." That term is not defined anywhere in the statute and thus is interpreted according to its ordinary meaning. *Morris Commc'ns Corp. v. City of Bessemer City*, 365 N.C. 152, 158, 712 S.E.2d 868, 872 (2011). The ordinary meaning of "erroneous" is "not correct" or "mistaken." *Merriam-Webster* (new ed. 2016). Thus, an instrument "erroneously satisfied of record" is one that is incorrectly or mistakenly satisfied. This supports Wells Fargo's interpretation, because there is no textual limit on what *type* of mistake is necessary.

The legislative history of section 45–36.6 supports this conclusion. The statute is part of the Uniform Residential Mortgage Satisfaction Act that was adopted in North Carolina and a number of other states. The original version of the statute, enacted by our General Assembly in 2005, unquestionably limited rescission to circumstances in which the underlying obligation was not actually satisfied—or, put another way, unquestionably adopted American National's interpretation:

> In this section, "document of rescission" means a document stating that an identified satisfaction or affidavit of satisfaction of a security instrument was recorded erroneously or that a security instrument was satisfied of record erroneously, *the*

*secured obligation remains unsatisfied*, and the security instrument remains in force.

N.C. Gen. Stat. § 45–36.6(a) (2005) (now repealed); *see also* Unif. Residential Mortg. Satis. Act § 104(a) (Nat'l Conf. Comm'rs Unif. State Laws 2015).

In 2011, in a bill intended to "modernize" many provisions concerning deeds of trust and other instruments, the General Assembly deleted subsection (a), quoted above, and replaced it with the current version of the statute, which no longer requires that "the secured obligation remain unsatisfied" in order to file a document of rescission. 2011 N.C. Sess. Laws 312, § 4 (S.B. 679).

It is a longstanding principle of statutory construction that "an amendment to an unambiguous statute indicates the intent to change the law." *Childers v. Parker's, Inc.*, 274 N.C. 256, 260, 162 S.E.2d 481, 484 (1968). Here, the original statute was taken directly from a carefully vetted uniform law developed under the auspices of the National Conference of Commissioners on Uniform State Laws. That provision was not ambiguous. Then, several years later, the General Assembly amended the statute and departed from the language in the model uniform law. We must presume that by changing the law—and in particular by departing from the language of a Uniform Act—the General Assembly intended for the new law to have a different meaning. *See id.*

Simply put, when we examine both the plain language and legislative history of this statute, it used to say what American National claims the statute means now.

But then the legislature changed the law and it now says, and means, what Wells Fargo claims. *See id.*

American National argues that this interpretation of "erroneously satisfied" renders another section of the statute meaningless and thus should be rejected under a separate, longstanding principle of statutory construction. *See generally Lunsford v. Mills*, 367 N.C. 618, 628, 766 S.E.2d 297, 304 (2014). Specifically, American National points to the provision permitting damages against a person who "wrongfully" files a document of rescission. American National contends that if *any* unilateral mistake allows a party to rescind a certificate of satisfaction, a party could never "wrongfully" record a document of rescission under N.C. Gen. Stat. § 45–36.6(d), thus rendering that section meaningless.

We disagree. Even under Wells Fargo's interpretation of the statute, there are countless ways in which a person could wrongfully file a document of rescission. For example, someone with no connection to the underlying obligation, and thus without statutory standing to file the rescission document, might do so, which is plainly "wrongful." *See* N.C. Gen. Stat. § 45–36.6(b), (e)(5). Or a person with authority to file the document of rescission might do so not because they made some mistake but for some other, "wrongful" reason, such as to harass the debtor or secure leverage in negotiations with other parties who have issued secured loans to the same debtor. Thus, our interpretation of subsection (b) of the statute does not render subsection

(d) superfluous.

The dissent also raises several points not raised by American National. First, the dissent expresses concern that "the briefs in this case did not really address legislative history or statutory construction" and therefore "the Court does not have the benefit of full briefing and argument of this rationale."

To be sure, the parties could have more fully addressed the proper construction of this statute. But there is no question that the meaning of the statute is an issue preserved for appellate review—indeed, it is the primary issue in this case both at the trial level and on appeal. When this Court is called upon to interpret a statute, we must examine the text, consult the canons of statutory construction, and consider any relevant legislative history, regardless of whether the parties adequately referenced these sources of statutory construction in their briefs. To do otherwise would permit the parties, through omission in their briefs, to steer our interpretation of the law in violation of the axiomatic rule that while litigants can stipulate to the facts in a case, no party can stipulate to what the law is. That is for the court to decide.

The dissent next points to the title of the bill enacting the 2011 amendments, which indicates that it is an act to "modernize" various aspects of secured transactions, including "equity line liens." The dissent speculates that the removal of the phrase "the secured obligation remains unsatisfied" may have been meant only

to address an issue in which "a home equity line of credit with a zero balance outstanding" is mistakenly canceled because it reached a zero balance, despite the parties intending for the credit line to remain open.

It is certainly possible that this legislative change was intended solely for the purpose the dissent identifies. But there are several reasons for doubt. First, the bill also separately amended several statutes dealing exclusively with equity line security instruments—statutes that have nothing to do with rescission. *See, e.g.*, 2011 Sess. Laws 312, §§ 21, 23 (S.B. 679), *amending* N.C. Gen. Stat. §§ 45–82, 45-82.2. The reference to "equity lien lines" in the title of the bill might be a reference to these provisions, not to the changes in the rescission statute. Second, Chapter 45 of the General Statutes already contains a section addressing the additional steps that must be taken to cancel an instrument securing a home equity line of credit or similar loan that can have a zero balance yet not be subject to cancelation. *See* N.C. Gen. Stat. § 45–36.9. In other words, by law, a home equity line of credit does not become "satisfied" simply by reaching a zero balance. This, in turn, means there was no pressing need to amend the uniform act to ensure that it applied to home equity lines of credit.

All of this means (as the dissent observes) that this "equity line liens" interpretation is but one of several "equally possible" legislative intents about which we can only speculate. And, more fundamentally, this speculation about the intent

of the 2011 amendment has no effect on our initial observation that the plain language of "erroneously satisfied of record" supports Wells Fargo's interpretation.

In sum, this Court has two choices: (1) we can apply the plain language and settled canons of statutory construction, which results in a statutory interpretation that the legislature may not have intended; or (2) we can interpret the statute in the way we, as judges, *think* the legislature intended, which may also result in a statutory interpretation that the legislature may not have intended. The choice is obvious. We will not speculate about what we think the legislature intended; we will apply the plain language and applicable statutory canons and, if the result is unintended, the legislature will clarify the statute.

Accordingly, we hold that an instrument "erroneously satisfied of record" under N.C. Gen. Stat. § 45–36.6 is one for which the certificate of satisfaction was erroneously or mistakenly filed for *any* reason, even a unilateral mistake not apparent to anyone except the party who mistakenly filed it.

## II. Material dispute of fact concerning the erroneous filing

Although we accept Wells Fargo's interpretation of the statute, that is not the end of this appeal. The trial court entered summary judgment in favor of Wells Fargo. Summary judgment is appropriate only if "there is no genuine issue as to any material fact" in the case. N.C. R. Civ. P. 56(c). Under the statutory construction of

N.C. Gen. Stat. § 45–36.6 described above, there are genuine issues of material fact that preclude summary judgment.

To be sure, Wells Fargo forecast evidence showing that its filing of the certificate of satisfaction was a mistake. For example, Wells Fargo's Rule 30(b)(6) deponent stated that the company's records indicated that the 2004 loan "was never paid off" and that he knew this to be true because the 2004 loan "still exists within our systems of records. The—the mortgager is still due and owing on the note for this property." According to Wells Fargo, this evidence shows that the company believed the 2004 deed of trust still secured some outstanding obligation and thus it was a mistake to file the certificate of satisfaction.[3]

But there is at least some evidence that discredits this testimony and creates a genuine issue of material fact. For example, American National points to the 2006 deed of trust, which was prepared at the same time as the 2006 note. That deed of trust secured the 2006 note and described itself as the "first deed of trust" with

---

[3] Wells Fargo also argues that, regardless of its subjective intent, rescission was appropriate because the 2004 deed of trust automatically secured the 2006 loan because the deed of trust contained "future advances/obligations" language. We disagree. The deed of trust unquestionably secured "future advances," as indicated by a section in the deed of trust titled "Future Advances." Future advances are additional disbursements of funds that increase the "outstanding principal balance owing on an obligation." N.C. Gen. Stat. § 45–67(1). The 2006 loan did not increase the "outstanding principal balance" owed under the 2004 loan. It was an entirely new loan, with its own deed of trust (which described itself as the "first deed of trust" with respect to the 2006 loan), and which never referenced the 2004 loan or the 2004 deed of trust. At best, the 2006 loan was a "future obligation" under N.C. Gen. Stat. § 45–67(2), not a future advance, and the 2004 deed of trust does not contain sufficient language to automatically secure "future obligations" having no connection to the original 2004 loan. *See* N.C. Gen. Stat. § 45–68(1b).

respect to the 2006 loan. None of the paperwork concerning the 2006 refinancing mentions the 2004 deed of trust. American National also points to testimony from Wells Fargo's 30(b)(6) deponent acknowledging that, as a matter of company practice, if a loan is paid off in full, the company would prepare and file a certificate of satisfaction for the corresponding deed of trust. Thus, there is at least some evidence indicating that Wells Fargo's filing of the certificate of satisfaction was not a mistake; rather, this evidence suggests that, for whatever reason, Wells Fargo chose not to have the 2006 loan secured by the 2004 deed of trust. This, in turn, would mean that Wells Fargo filed the certificate of satisfaction on purpose, not by mistake.

Simply put, under the statutory analysis of N.C. Gen. Stat. § 45–36.6 discussed above, this case cannot be resolved on summary judgment. Genuine issues of material fact exist concerning whether Wells Fargo filed the certificate of satisfaction by mistake or on purpose. We therefore reverse the trial court's entry of summary judgment and remand for further proceedings.

**Conclusion**

We reverse the trial court's entry of summary judgment and remand for further proceedings.

REVERSED AND REMANDED.

Judge TYSON concurs.

Judge STROUD dissents with separate opinion.

No. COA15-689 – *Wells Fargo Bank, N.A. v. American Nat'l Bank and Trust Co.*

STROUD, Judge, dissenting.

Because I do not believe that the 2011 amendments to N.C. Gen. Stat. § 45-36.6 (2015)[4] would allow the type of mistake that Wells Fargo made in this case to be corrected by rescinding the cancellation of the deed of trust, I dissent from the majority. While I would also reverse the trial court's order, I would hold -- unlike the majority -- that the trial court should have granted summary judgment in favor of defendant and declared American National, not Wells Fargo, as the first priority lienholder.

The majority correctly states that the "crux of this case" is the meaning of the phrase "[i]f . . . a security instrument is erroneously satisfied of record" contained in N.C. Gen. Stat. § 45-36.6. However, I disagree with the majority's contention that Wells Fargo's error was its act of cancelling the 2004 deed of trust of record. Wells Fargo was required by law to cancel the 2004 deed of trust. Indeed, the undisputed evidence shows that the loan secured by the 2004 deed of trust was, in fact, satisfied and terminated with the proceeds from the subsequent 2006 note secured by the 2006 deed of trust. Rather, Wells Fargo's "error" was failing to obtain an agreement from American National to subordinate American National's lien to Wells Fargo's 2006 deed of trust. When the 2004 note was satisfied and terminated, the 2004 deed of

---

[4] As the statute has not been amended since 2011, we refer to the 2015 version, which accurately reflects the statute as it stood at the time the document of rescission was recorded in this case, on 27 August 2013.

trust was no longer of any effect. S*ee Walston v. Twiford*, 248 N.C. 691, 693, 105 S.E.2d 62, 64 (1958) (" 'A mortgage which purports to secure the payment of a debt has no validity if the debt has no existence.' " (quoting *Bradham v. Robinson*, 236 N.C. 589, 594, 73 S.E.2d 555, 558 (1952)). At that point, it was Wells Fargo's obligation to cancel the 2004 deed of trust. *See* N.C. Gen. Stat. § 45-36.9(a) (2015) ("A secured creditor shall submit for recording a satisfaction of a security instrument within 30 days after the creditor receives full payment or performance of the secured obligation.").

Much of the majority's analysis is based upon legislative history and canons of statutory construction, although the briefs in this case did not really address legislative history or statutory construction. So my first concern is that the Court does not have the benefit of full briefing and argument of this rationale, although this is the first published opinion interpreting the 2011 amendments to Article 45.

It is true that the amendments were apparently intended to "modernize" the law regarding deeds of trust, as indicated by the bill's subtitle, which in full is "AN ACT TO MODERNIZE AND ENACT CERTAIN PROVISIONS REGARDING DEEDS OF TRUST, INCLUDING RELEASES, SHORT SALES, FUTURE ADVANCE PROVISION TERMINATIONS AND SATISFACTIONS, TERMINATIONS AND SATISFACTIONS FOR EQUITY LINE LIENS, RELEASE OF ANCILLARY DOCUMENTS, ELIMINATING TRUSTEE OF DEED OF TRUST

AS NECESSARY PARTY FOR CERTAIN TRANSACTIONS AND LITIGATION, AND INDEXING OF SUBSEQUENT INSTRUMENTS RELATED THERETO." 2011 N.C. Sess. Laws 2011-312. On the other hand, as an act to "MODERNIZE . . . TERMINATIONS AND SATISFACTIONS FOR EQUITY LINE LIENS," *id.*, the bill could also be understood as intending to address mistakes where a home equity line of credit has been mistakenly cancelled when the balance was paid off, although the line of credit remains open, or a bank cancels the wrong deed of trust when a loan is paid off.

Under the original version of N.C. Gen. Stat. § 45-36.6 (2005), the erroneous cancellation of an equity line could only be rescinded if there was a balance owing on the line of credit when the erroneous cancellation occurred. That is, under the former statute, a " 'document of rescission' " could only be used to correct an error where "the secured obligation remains unsatisfied." N.C. Gen. Stat. § 45-36.6(a) (2005). But it is a modern reality that equity lines at times have balances owing and then are paid to zero, yet remain open and available to be drawn upon again. I believe that the deletion of the phrase "the secured obligation remains unsatisfied" was merely intended to "modernize" the statute to allow the erroneous cancellation of an equity line to be rescinded, even if the line had a zero balance at the time of the error.

I do not believe that the deletion was intended to apply in the situation in the present case where a deed of trust was cancelled because the loan it secured was paid

off by a new loan secured by a different deed of trust. Wells Fargo *intended* to cancel the deed of trust in this case. The "error" was not based upon the homeowner's ability to borrow again on the note that had been paid off. Instead, that note had been satisfied, never to be drawn upon again, and replaced by a new note secured by a new deed of trust. The "error" was Wells Fargo's failure to do a title search when first filing the new deed of trust and then failing to obtain a subordination agreement. Wells Fargo did not "erroneously" cancel the 2004 deed of trust; it failed to get a subordination agreement from American National. This type of error was not correctable under the original version of N.C. Gen. Stat. § 45-36.6, and I do not believe that the 2011 amendment changes this outcome.

An equally possible legislative intent for this amendment was to address a situation where a home equity line of credit is mistakenly cancelled when no balance is owing although the credit line remains open. Under the law before the 2011 amendment, a wrongly cancelled deed of trust securing a home equity line of credit with no balance owing could not be revived, because at the time of the cancellation, the secured obligation was in fact satisfied. With the 2011 amendment, a home equity line of credit with a zero balance outstanding but which remains open and available to draw upon which is wrongfully cancelled can be revived simply by rescission of the cancellation.

Even accepting Wells Fargo's evidence as true and construing it in the light most favorable to Wells Fargo, under my interpretation of the statute, Wells Fargo cannot demonstrate any genuine issue of material fact, since the "error" it alleges is not the type of "error" which allows rescission under N.C. Gen. Stat. § 45-36.6(b).  I would therefore reverse the trial court's order and remand for entry of an order granting summary judgment in favor of defendant and declaring that Wells Fargo's attempted rescission was ineffective and thus defendant holds a valid, enforceable first priority lien upon the real property.