IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-589

No. COA21-654

Filed 6 September 2022

Wake County, No. 20 CVS 12925

COASTAL CONSERVATION ASSOCIATION, d/b/a CCA NORTH CAROLINA; BRUCE C. ABBOTT; CHARLES P. ADAMS, JR.; CONSTANTINE A. ARETAKIS, II; FREDERICK L. BERRY; ANDREW R. BOYD; HARRY T. BRANCH; TROY D. BRANHAM; RUPERT D. BROWN; JUDITH C. BULLOCK; WILLIAM L. BYRD, JR.; JOHNNY L. CANUP; MICHAEL D. CARTER; WILLIE T. CLOSS, JR.; KENNETH D. COOPER, JR.; L. AVERY CORNING, IV; PAUL N. COX; BENJAMIN M. CURRIN; DANIEL E. DAWSON; MARY F. DAWSON; CHARLES B. EFIRD; FRANK K. EILER; CHRISTOPHER ELKINS; DAN E. ESTREM; ANDREW P. GILLIKIN; LELAN E. HALLER, JR.; JOHN M. HISLOP; RAYMOND Y. HOWELL; JOEY S. HUMPHREY; THOMAS G. HURT; CLARK W. HUTCHINSON, JR.; ANDREW G. JONES, JR.; GEORGE M. KIVETT, JR.; JOHN C. KNIGHT, JR.; BRADFORD A. KOURY; CHARLES H. LAUGHRIDGE; CASEY M. LLOYD; MARILYN R. LOWE; CHARLIE LOYA, JR.; NICKIE N. LUCAS; BRUCE D. MACLACHLAN; EULISS D. MADREN; WILLIAM W. MANDULAK; DARRELL G. MCCORMICK; TERESA A. D. MCCULLOUGH; SAMUEL B. MCLAMB, III; JAMES M. MCMANUS, JR.; JOHN W. MCQUAID; GEORGE R. MODE; JOHN V. MOON; DENNIS K. MOORE; KENNETH N. MOORE, JR.; WARREN S. MOORING; ELIJAH T. MORTON; DANIEL J. NIFONG; SADIE R. NIFONG; ROBERT B. NOWELL, JR.; ELBERT W. OWENS, JR.; WYATT E. PARCEL; VAN B. PARRISH; JAMES H. PARROTT; BRYAN C. PATE; ALEXANDRA S. PEYTON; HUNTER L. PEYTON; JEFFREY P. PICKERING; ROBERT R. RICE, II; ROBERT T. RICE; ORICE A. RITCH, JR.; MARK A. RUFFIN; PEARCE RUFFIN; ERIC J. SATO; SEAN P. SCULLY; LENNY T. SMATHERS; CARROLL W. SPENCER; JOHN R. SPRUILL; DAVID M. SUMMERS; JOHN B. TAGGART; JESSE H. WASHBURN, II; ANDREW J. WEBSTER; MELISSA N. WILLIAMS; VANDEXTER WILLIAMS; DONALD A. WILLIS, JR.; A. REXFORD WILLIS, III; JAN L. WILLIS; PHILLIP R. WOOD; RAYE P. WOODIN, III; JOSEPH G. YAGER, Plaintiffs,

v.

STATE OF NORTH CAROLINA, Defendant.

Appeal by Defendant from Order entered 28 July 2021 by Judge Bryan Collins in Wake County Superior Court. Heard in the Court of Appeals 26 April 2022.

> *Poyner Spruill LLP, by Keith H. Johnson, Andrew H. Erteschik, John Michael Durnovich, and Stephanie L. Gumm, for plaintiffs-appellees.*
>
> *Attorney General Joshua H. Stein, by Assistant Attorney General Scott A. Conklin and Special Deputy Attorney General Marc Bernstein, for defendant-appellant.*
>
> *Southern Environmental Law Center, by Alex J. Hardee and Derb S. Carter, Jr., for Amicus Curiae North Carolina Wildlife Federation and Sound Rivers.*
>
> *John J. Korzen for Amicus Curiae Professor Joseph J. Kalo.*

HAMPSON, Judge.

## **Factual and Procedural Background**

¶ 1  The State of North Carolina (the State) appeals from the trial court's Order denying its Motion to Dismiss pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6) of the North Carolina Rules of Civil Procedure. The Record before us—including the factual allegations made in Plaintiffs' Complaint, which we treat as true solely for purposes of this appeal—reflects the following:

¶ 2  On 10 November 2020, Coastal Conservation Association, d/b/a CCA North Carolina, Inc., and the other named individuals who are citizens and residents of North Carolina, (collectively, Plaintiffs) filed a Complaint against the State, alleging

breach of trust under the public trust doctrine, N.C. Const. art. I, § 38, and N.C. Const. art. XIV, § 5. Specifically, Plaintiffs alleged:

> The public-trust doctrine imposes a fiduciary duty on the State to manage and regulate the harvest of [coastal finfish and shellfish] in a way that protects the right of current and future generations of the public to use public waters to fish. As a result, the State may not allow the harvest of finfish or shellfish in public waters in quantities or by methods that cause unnecessary waste or impair the sustainability of fish stocks, which in turn threaten the right of current and future generations of the public to use such public waters to fish.

Plaintiffs alleged the State had breached this duty by permitting for-profit harvesting of finfish or shellfish in quantities or through methods that cause overexploitation or undue wastage to North Carolina's coastal fisheries resources. According to Plaintiffs' Complaint, the State:

> has continued to allow—and even facilitated—several commercial fishing practices that result in substantial wastage of coastal fish stocks or their prey species, or result in critical habitat destruction. Those commercial fishing practices include trawling in estuarine waters with significant populations of juvenile finfish, and using "unattended" gillnets. . . . As a result, stocks of multiple fish species . . . have declined precipitously—84 to 98 percent—since the last major fisheries management reform legislation was enacted in North Carolina in 1997.[1]

---

[1] Plaintiffs' Complaint contains over 100 pages of allegations including data supporting Plaintiff's claim regarding the causal connection between these two commercial fishing practices and the decline in fish populations.

Plaintiffs requested that the Court: declare that the State breached its obligation under the public-trust doctrine, Article I, Section 38 of the North Carolina Constitution, and Article XIV, Section 5 of the North Carolina Constitution; enjoin the State from committing further breaches of its obligations and retain jurisdiction to enforce the State's compliance with that injunctive relief; tax the costs of the action to the State; and assign a Resident Superior Court Judge pursuant to Rule 2.2 of the Local Rules for Civil Superior Court of the Tenth Judicial District to preside over this action.

¶ 3    The State responded to Plaintiffs' Complaint by filing a Motion to Dismiss pursuant to Rules 12(b)(1), (2), and (6) of the Rules of Civil Procedure. Specifically, the State alleged:

> 1. The plaintiffs have not pleaded facts that show that the State has waived its sovereign immunity, and the State has not in fact or law waived its sovereign immunity. The Complaint should be dismissed under Rule 12(b)(1), (2) and (6).
>
> 2. The plaintiffs lack standing to make a claim under the public trust doctrine because only the State can enforce the public trust doctrine. The claim should be dismissed under Rule 12(b)(1) and (6).
>
> 3. The Complaint does not state a claim upon which relief can be granted because the public trust doctrine does not create the type of fiduciary obligations upon which the plaintiffs rely. The Complaint should be dismissed under Rule 12(b)(6).
>
> 4. The Complaint does not state a claim upon which relief can be granted because the remedy requested would violate the

constitutional provision requiring the separation of powers. N.C. Const, art. I, § 6. The Complaint should be dismissed under Rule 12 (b)(6).

5. To the extent that the plaintiffs are alleging an independent claim under article I, section 38 of the North Carolina Constitution, the Complaint does not state a claim upon which relief can be granted under that provision because the Complaint does not allege facts that show that the State has abridged any of the plaintiffs' rights that are protected by article I, section 38. Any such claim should therefore be dismissed under Rule 12(b)(6).

6. To the extent that the plaintiffs are alleging an independent claim under article XIV, section 5 of the North Carolina Constitution, the Complaint does not state a claim upon which relief can be granted under that provision because article XIV, section 5 does not articulate any enforceable individual right but instead clarifies state policies and functions regarding environmental protection and creates a land conservation program. Any such claim should therefore be dismissed under Rule 12(b)(6).

¶ 4      On 9 June 2021 the trial court held a hearing on the State's Motion to Dismiss, and on 28 July 2021 the trial court entered an Order Denying Motion to Dismiss. The State filed written Notice of Appeal on 26 August 2021.

## **Appellate Jurisdiction**

¶ 5      As an initial matter, we must first address whether we have appellate jurisdiction to review the trial court's Order. As the State acknowledges, the trial court's denial of the State's Motion to Dismiss is an interlocutory order. Generally, "a party has no right to immediate appellate review of an interlocutory order." *Veazey*

*v. Durham*, 231 N.C. 357, 362, 57 S.E.2d 377, 381 (1950). "An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy." *Id.* However, N.C. Gen. Stat. § 1-277 (2021) allows a party to immediately appeal an order that either (1) affects a substantial right or (2) constitutes an adverse ruling as to personal jurisdiction.

¶ 6 Here, the State moved to dismiss Plaintiffs' causes of action pursuant to Rules 12(b)(1), (2), and (6) of the North Carolina Rules of Civil Procedure, based on the defense of sovereign immunity. "Our Courts generally recognize immunity as a defense that can be raised under Rules 12(b)(1), 12(b)(2), or 12(b)(6)." *Suarez v. Am. Ramp Co. (ARC)*, 266 N.C. App. 604, 610, 831 S.E.2d 885, 890 (2019).

> Although the federal courts have tended to minimize the importance of the designation of a sovereign immunity defense as either a Rule 12(b)(1) motion regarding subject matter jurisdiction or a Rule 12(b)(2) motion regarding jurisdiction over the person, the distinction becomes crucial in North Carolina because G.S. 1-277(b) allows the immediate appeal of a denial of a Rule 12(b)(2) motion but not the immediate appeal of a denial of a Rule 12(b)(1) motion.

*Teachy v. Coble Dairies, Inc.*, 306 N.C. 324, 327-328, 293 S.E.2d 182, 184 (1982). *See also Davis v. Dibartolo*, 176 N.C. App. 142, 144–45, 625 S.E.2d 877, 880 (2006) (declining to review interlocutory appeal of denial of motion to dismiss for lack of subject matter jurisdiction due to sovereign immunity under Rule 12(b)(1), but

reviewing denial of Rule 12(b)(6) motion based upon governmental immunity); *Data Gen. Corp. v. Cty. of Durham*, 143 N.C. App. 97, 100, 545 S.E.2d 243, 245–46 (2001) (declining to review interlocutory appeal of denial of motion to dismiss due to sovereign immunity under Rule 12(b)(1), but reviewing denial of Rule 12(b)(2) motion for lack of personal jurisdiction based upon governmental immunity).  Thus, for the purposes of this appeal, we only review the trial court's denial of the State's Rule 12(b)(2) and 12(b)(6) motions.

¶ 7        Our Court has held a "denial of a Rule 12(b)(2) motion premised on sovereign immunity constitutes an adverse ruling on personal jurisdiction and is therefore immediately appealable under section 1-277(b)."  *Can Am South, LLC v. State*, 234 N.C. App. 119, 124, 759 S.E.2d 304, 308 (2014).  Likewise, "a denial of a Rule 12(b)(6) motion to dismiss on the basis of sovereign immunity affects a substantial right and is immediately appealable."  *Green v. Kearney*, 203 N.C. App. 260, 266, 690 S.E.2d 755, 761 (2010).  Thus, the Order is immediately appealable, and this Court may assert appellate jurisdiction over this matter.

## Issue

¶ 8        The dispositive issues on appeal are whether: (I) sovereign immunity bars Plaintiffs' claims for injunctive and declaratory relief seeking judicial review of the State's obligations and alleged breach of trust under the public trust doctrine; (II) Plaintiffs' Complaint states a claim for relief on state constitutional grounds under

N.C. Const. Art. XIV, Sec. 5—the Conservation of Natural Resources Clause—for enforcement of public trust doctrine rights; and (III) Plaintiffs' Complaint states a claim for relief on state constitutional grounds under N.C. Const. Art. I, Sec. 38— Right to Hunt, Fish, and Harvest Wildlife—for enforcement of public trust doctrine rights.

## Analysis

### I. Public-Trust Doctrine

The State contends Plaintiffs' Complaint is barred by the defense of sovereign immunity. Specifically, the State asserts the public trust doctrine, as a common-law doctrine, is subject to sovereign immunity. Therefore, the State argues Plaintiffs' Complaint must be dismissed. "The doctrine of sovereign immunity—that the State cannot be sued without its consent—has long been the law in North Carolina." *Smith v. State*, 289 N.C. 303, 309–310, 222 S.E.2d 412, 417 (1976). "The doctrine of sovereign immunity is judge-made in North Carolina and was first adopted by the North Carolina Supreme Court in *Moffitt v. Asheville*, 103 N.C. 237, 9 S.E. 695 (1889)." *Corum v. Univ. of N.C.*, 330 N.C. 761, 785, 413 S.E.2d 276, 291 (1992).[2] Since

---

[2] We are cognizant of the United States Supreme Court's recent discussion summarizing its own history of the doctrine of sovereign immunity in *Franchise Tax Board of California v. Hyatt*, 139 S. Ct. 1485, 1493–95, 203 L. Ed. 2d 768 (2019) and our application of its holding in *Farmer v. Troy Univ.*, 276 N.C. App. 53, 2021-NCCOA-36, ¶¶ 15–24, *appeal dismissed*, 379 N.C. 164, 863 S.E.2d 621 (2021), *and review allowed in part, denied in part,* 379 N.C. 127, 863 S.E.2d 775 (2021). However, while "[t]he Supreme Court of the United States is the final authority on federal constitutional questions[,]" the

*Moffitt*, our Courts have been hesitant to disturb the doctrine of sovereign immunity. *See Steelman v. New Bern*, N.C., 279 N.C. 589, 595, 184 S.E.2d 239, 243 (1971) ("It may well be that the logic of the doctrine of sovereign immunity is unsound and that the reasons which led to its adoption are not as forceful today as they were when it was adopted.  However, . . . we feel that any further modification or the repeal of the doctrine of sovereign immunity should come from the General Assembly, not this Court.").   Nevertheless, our Courts have identified instances where sovereign immunity does not apply—including specifically where the State enters into a valid contract and, subsequently, breaches the contract.   *Smith*, 289 N.C. at 320, 222 S.E.2d at 423–24 ("[W]henever the State of North Carolina, through its authorized officers and agencies, enters into a valid contract, the State implicitly consents to be sued for damages on the contract in the event it breaches the contract.").

¶ 10        "[T]he following policy grounds are usually offered for immunity: a need to prevent the diversion of public funds to compensate for private purposes; a need to

North Carolina Supreme Court remains the authority on our state law issues and the final voice on the history of the law and jurisprudence of North Carolina.  *State v. Elliott*, 360 N.C. 400, 421, 628 S.E.2d 735, 749 (2006); *see also Bulova Watch Co., Inc. v. Brand Distribs. of N. Wilkesboro, Inc.*, 285 N.C. 467, 474, 206 S.E.2d 141, 146 (1974) ("[I]n the construction of the provision of the State Constitution, the meaning given by the Supreme Court of the United States to even an identical term in the Constitution of the United States is, though highly persuasive, not binding upon this Court[.]"); *Unemployment Compensation Comm'n v. Jefferson Standard Life Ins. Co.*, 215 N.C. 479, 2 S.E.2d 584, 589 (1939) ("Accordingly, it would appear settled that the matter here involved is one of state law, to be interpreted finally by this Court.").  Unless and until the North Carolina Supreme Court revisits its earlier determination that sovereign immunity in North Carolina is "judge-made" law, we are bound by its prior precedent.  Moreover, we note this case does not involve another state's claim of sovereign immunity in North Carolina courts.

avoid disruption of public service and safety; a need to prevent governmental involvement in endless embarrassments, difficulties and losses subversive to the public interest; and the nonprofit nature of government should be reflected in non-liability." *Id.* at 312, 222 S.E.2d at 419 (quoting The National Association of Attorneys General, *Sovereign Immunity: The Liability of Government and its Officials*, Jan. 1975, at 17).

¶ 11   Here, Plaintiffs are seeking declaratory and injunctive relief against the State seeking a declaration the State has breached its alleged obligations under the public trust doctrine and enjoining the State from further violations of its alleged obligations under the public trust doctrine. "The public trust doctrine is a common law principle providing that certain land associated with bodies of water is held in trust by the State for the benefit of the public." *Fabrikant v. Currituck Cty.*, 174 N.C. App. 30, 41, 621 S.E.2d 19, 27 (2005) (citing *State ex rel. Rohrer v. Credle*, 322 N.C. 522, 527–28, 369 S.E.2d 825, 828 (1988)). Although the doctrine arises from the common law, it is perhaps best understood as "an implied constitutional doctrine"—one that "springs from a fundamental notion of how government is to operate with regard to common heritage natural resources." Harrison C. Dunning, *The Public Trust: A fundamental Doctrine of American Property Law*, 19 Envtl. L. 515, 523 (1989). North Carolina first recognized the public trust doctrine in the case of *Shepard's Point Land Company* in 1903. There, our Supreme Court stated: the State "can no more abdicate its trust

over property in which the whole people are interested, like navigable waters . . . than it can abdicate its police powers in the administration of government and the preservation of the peace." *Shepard's Point Land Co. v. Atl. Hotel*, 132 N.C. 517, 528, 44 S.E. 39, 42 (1903), *overruled by Gwathmey v. State ex rel. Dep't. of Env't, Health, & Nat. Res.*, 342 N.C. 287, 464 S.E.2d 674 (1995); *see also, Stone v. Mississippi*, 101 U.S. 814, 820 (1879) ("[T]he power of governing is a trust committed by the people to the government, no part of which can be granted away."). In the years following *Shepard's Point*, our appellate courts had multiple occasions to examine the public trust doctrine and its application to navigable waters in North Carolina. Relevant to the case *sub judice*, three key principles have emerged.

¶ 12     First, "the public trust doctrine, established by the common law of this State, involves two concepts: (1) public trust lands, which are 'certain land[s] associated with bodies of water [and] held in trust by the State for the benefit of the public[;]' and (2) public trust rights, which are 'those rights held in trust by the State for the use and benefit of the people of the State in common.' " *Town of Nags Head v. Richardson,* 260 N.C. App. 325, 334, 817 S.E.2d 874, 882 (2018) (quoting *Fabrikant*, 174 N.C. App. at 41, 621 S.E.2d at 27). "Public trust rights attach to the [public trust lands]" and " 'include, but are not limited to the right to navigate, swim, hunt, fish, and enjoy all recreational activities' offered by public trust lands." *Id.* (quoting N.C. Gen. Stat. § 1–45.1 (2017)).

¶ 13 However, the right to hunt and fish does not exist in the abstract. The public must have access to harvestable wildlife and fish to have a meaningful opportunity to exercise these rights. *See U.S. v. Washington*, 853 F.3d 946, 965 (9th Cir. 2017), *aff'd*, 138 S. Ct. 1832 (U.S. 2018) (per curium) (stating in the context of a Native American treaty guaranteeing access to fisheries that a "right of access to . . . fishing places would be worthless without harvestable fish."). Indeed, "the State's *wildlife population* is a natural resource of the State held by it in trust for its citizens." *State v. Steward*, 40 N.C. App. 693, 695, 253 S.E.2d 638, 640 (1979) (emphasis added). *See also, Shepard's Point Land Co.*, 132 N.C. at 526, 44 S.E. at 41 (emphasis added) ("The principle has long been settled the States own the tidewaters themselves, *and the fish in them*, so far as they are capable of ownership while running . . . [but] [i]t is a title held in trust for the people of the State."); *State ex. rel. Rohrer v. Credle*, 322 N.C. 522, 534, 369 S.E.2d 825, 826 (1988) (emphasis added) ("History and the law bestow the title of these submerged land *and their oysters* upon the State to hold in trust for the people."); N.C. Gen. Stat. § 113–131(a) (2021) ("The marine and estuarine and wildlife resources of the State belong to the people of the State as a whole.").

¶ 14 Second, there is a definite distinction between the State's interest in public trust lands and the State claiming title to property against a private party, as might give rise to an action under N.C. Gen. Stat. § 41–10.1. *See* N.C. Gen. Stat. § 41–10.1 (2021) ("Whenever the State of North Carolina . . . asserts a claim of title to land . . .

[the land owner] may bring an action in the superior court of the county in which the land lies against the State . . . ."); *see also, State v. Taylor*, 322 N.C. 433, 435, 368 S.E.2d 601, 602 (1988) (holding the scope of the waiver of sovereign immunity in N.C. Gen. Stat. § 41–10.1 should be strictly construed). This principle is illustrated by *Fabrikant v. Currituck County*. There, the plaintiffs, who owned oceanfront property in Currituck County, brought suit against various defendants including the State, seeking a declaratory judgment that they had exclusive right of the portion of the beach between the high tide mark and the vegetation line, identified as the dry sand beach. 174 N.C. App. at 32, 621 S.E.2d at 22. Plaintiffs also sought injunctive relief to prevent the general public from trespassing over the dry sand beach areas surrounding their homes. *Id.*

¶ 15        The State filed a motion to dismiss based *inter alia* on sovereign immunity. *Id.* In response, the plaintiffs alleged since the public trust doctrine allowed the public access to their dry sand beaches, the State had effectively laid a claim of title to the land. *Id.* at 41, 621 S.E.2d at 27. Therefore, the plaintiffs contended their complaint's allegations fell within the scope of N.C. Gen. Stat. § 41–10.1, thereby establishing a waiver of sovereign immunity. *Id.* at 39, 621 S.E.2d at 26.

¶ 16        This Court stated "the public trust doctrine cannot give rise to an assertion of ownership that would be available to any 'private litigants in like circumstances.' " *Id.* at 42, 621 S.E.2d at 27 (quoting *Williams v. N.C. State Bd. of Educ.*, 266 N.C. 761,

765, 147 S.E.2d 381, 383 (1966). "Any party, public or private, can assert title to land on the strength of a deed, but only the State, acting in its sovereign capacity, may assert rights in land by means of the public trust doctrine." *Id.* (citing *Neuse River Found., Inc. v. Smithfield Foods, Inc.*, 155 N.C. App. 110, 118, 574 S.E.2d 48, 54 (2002)). This Court concluded the State's interest in public trust lands does not amount to a claim of title to land under N.C. Gen. Stat. § 41–10.1. *Id.* at 43, 621 S.E.2d at 25 ("Since the General Assembly chose to limit the waiver to an assertion of 'claim of title to land,' rather than use the broader 'interest in real property,' we must construe that language strictly and hold that a 'claim of title to land' requires more than just an interest in real property."). As such, because the plaintiffs' claims did not fall under the scope of N.C. Gen. Stat. § 41–10.1, that statute could also not be relied upon as a waiver of sovereign immunity. *Id.* Thus, this Court held the State had not waived sovereign immunity to plaintiffs' claims for declaratory and injunctive relief seeking exclusive rights to the property at issue. *Id.* Therefore, N.C. Gen. Stat. § 41–10.1 does not constitute an express waiver of sovereign immunity as a defense to a claim by a private citizen asserting rights of ownership or exclusive access to public trust lands under the public trust doctrine. *See Id.*

¶ 17 Third, only the State has standing to bring suit against a private corporation seeking "non-individualized, or public, remedies for alleged harm to public waters" under the public trust doctrine. *Neuse River Found.,* 155 N.C. App. at 118, 574 S.E.2d

at 54. This Court set out this principle in the case of *Neuse River Foundation, Inc. v. Smithfield Foods, Inc.* There, the plaintiffs filed suit against three hog farming companies alleging defendants improperly handled hog waste, resulting in massive pollution and contamination of the Neuse, New, and Cape Fear Rivers, and those rivers' tributaries and estuaries. *Id.* at 112, 574 S.E.2d at 50. The plaintiffs' claims were based in part on the public trust doctrine. *Id.* This Court held the plaintiffs did not have standing to bring a claim under the public trust doctrine against a private corporation as "only the [S]tate, through the Attorney General, is authorized to bring in a representative capacity for and on behalf of the using and consuming public of this State actions deemed to be advisable in the public interest." *Id.* at 117, 574 S.E.2d at 53 (citing *Idaho v. Coeur D'Alene Tribe,* 521 U.S. 261, 284, 138 L. Ed. 2d 438, 457 (1997)).[3]

¶ 18    Applying these three key principles to the case *sub judice* provides more context for Plaintiffs' claims. First, as Plaintiffs allege, protecting fisheries falls within the purview of the public trust doctrine,[4] and "the State can no more abdicate this duty than it can abdicate its police powers in the administration of government

---

[3] The public trust doctrine "uniquely implicate[s] sovereign interests[,]" and the Court will not interfere when the relief requested "would divest the State of its sovereign control over submerged lands, lands with a unique status in the law and infused with a public trust the State itself is bound to respect." *Coeur D'Alene Tribe*, 521 U.S. at 284, 138 L. Ed. 2d at 457.

[4] *See Steward*, 40 N.C. App. at 695, 253 S.E.2d at 640; *Shepard's Point Land Co.*, 132 N.C. at 526, 44 S.E. at 41.

and the preservation of the peace." *Shepard's Point Land Co.*, 132 N.C. at 528, 44 S.E. at 42. Second, Plaintiffs here are not asserting rights of ownership or exclusive access to public trust lands. To the contrary, Plaintiffs' claims are broadly premised on the State's dominion over public trust property and obligation to enforce the public trust. Thus, the claims asserted here are distinguishable from the claims of property rights in *Fabrikant*. Third, and concomitantly, Plaintiffs are not attempting to enforce public trust rights against a private party—i.e. suing commercial fishermen for their role in the depletion of fish populations. Instead, Plaintiffs are bringing an action directly against the State for an alleged breach of its obligation to manage and protect fisheries for the benefit of the general public. Therefore, this case does not implicate the holding in *Neuse River Company*. Given this particular context, it does not appear that our Courts have had opportunity to directly address whether sovereign immunity bars the type of claim brought by Plaintiffs seeking to compel the State to enforce alleged obligations under the public trust doctrine. Our review of the development of North Carolina law applicable to both sovereign immunity and the public trust doctrine leads us to conclude sovereign immunity does not bar Plaintiffs' claim implicating the public trust doctrine in this case.

¶ 19        In *Gwathmey v. State ex rel. Department of Environment, Health, & Natural Resources*, our Supreme Court recognized the State may sometimes act contrary to the public interest and stated "the 'public trust' doctrine [is] a tool for judicial review

of state action affecting State-owned submerged land underlying navigable waters, including estuarine marshland . . . ." 342 N.C. at 293, 464 S.E.2d at 677. Indeed, even though *Gwathmey*, in part overruled *Shepard's Point*[5]—the original case adopting the public trust doctrine—the essential principle remains the same: the State owns tidal lands and waters for the benefit of the public, subject to "concomitant restraints." *Credle*, 322 N.C. at 525, 369 S.E.2d at 827.

¶ 20    Application of sovereign immunity in this case, however, would effectively reduce the public trust doctrine to nothing more than a "fanciful gesture" and prevent judicial review—contemplated by *Gwathmey*—as a plaintiff would never have the "opportunity to enter the courthouse doors and present his claims." *Craig v. New Hanover Cty. Bd. of Educ.*, 363 N.C. 334, 340–41, 678 S.E.2d 351, 355 (2009). Moreover, the policy reasons usually offered for sovereign immunity such as the need to prevent the diversion of public funds to compensate for private purposes are inapplicable in this case. Plaintiffs are not requesting the State compensate a private individual/corporation for alleged damages but are seeking an injunction preventing the State from committing breaches of its alleged obligations under the public trust doctrine.

---

[5] "We reject . . . *Shepard's Point Land Co.* to the extent that it implies that the public trust doctrine completely prohibits the General Assembly from conveying lands beneath navigable waters to private parties without reserving public trust rights. That position is without authority in either our statutes or our Constitution." *Gwathmey*, 342 N.C. at 302, 464 S.E.2d at 683.

¶ 21     Thus, because of the nature of the public trust doctrine as a tool for judicial review of the State's actions as trustee of fisheries, we conclude sovereign immunity does not apply in this case. Therefore, Plaintiffs' claims for declaratory and injunctive relief against the State for breach of its alleged duties under the public trust doctrine are not barred by sovereign immunity.

II.     Conservation of Natural Resources Clause

¶ 22     Alternatively, presuming arguendo a public trust doctrine claim is otherwise barred by sovereign immunity, Plaintiffs' Complaint also presents sufficient allegations of a claim arising directly under Article XIV, § 5 of our State Constitution.

¶ 23     Generally, sovereign immunity bars an action against the State unless the State has waived immunity or consented to the suit. *Taylor*, 322 N.C. at 435, 368 S.E.2d at 602. However, the doctrine of sovereign immunity will not stand as a barrier to North Carolina citizens who seek to remedy violations of their rights guaranteed under the North Carolina Constitution. *Corum*, 330 N.C. at 785–86, 413 S.E.2d at 291. Thus, a direct constitutional claim will survive a Rule 12(b)(6) motion to dismiss, notwithstanding the doctrine of sovereign or governmental immunity. *Craig*, 363 N.C. at 340–41, 678 S.E.2d at 355–56.

¶ 24     Our Supreme Court has developed a three-part test to determine whether a plaintiff's complaint has sufficiently alleged a claim for relief under our State Constitution. "First, to allege a cause of action under the North Carolina

Constitution, a state actor must have violated an individual's constitutional rights." *Deminski v. State Bd. of Educ.*, 377 N.C. 406, 2021-NCSC-58, ¶ 16.

¶ 25          "Second, the claim must be colorable." *Id.* "A 'colorable claim' is '[a] plausible claim that may reasonably be asserted, given the facts presented and the current law (or a reasonable and logical extension or modification of the current law)." *Id.* at ¶ 17 (quoting Colorable, Black's Law Dictionary (11th ed. 2019)). "In other words, the claim must present facts sufficient to support an alleged violation of a right protected by the State Constitution." *Id.*

¶ 26          "Lastly, there must be no adequate state remedy." *Id.* at ¶ 18. "No adequate state remedy exists when 'state law [does] not provide for the type of remedy sought by the plaintiff.'" *Id.* (quoting *Craig*, 363 N.C. at 340, 678 S.E.2d at 356). "[A] claim that is barred by sovereign or governmental immunity is not an adequate remedy." *Id.* "To be considered adequate in redressing a constitutional wrong, a plaintiff must have at least the opportunity to enter the courthouse doors and present his claim." *Id.* (quoting *Craig*, 363 N.C. at 340–41, 678 S.E.2d at 355).

¶ 27          Here, Plaintiffs alleged the State, acting through two administrative agencies—the North Carolina Division of Marine Fisheries and the North Carolina Marine Fisheries Commission—failed to protect Plaintiffs' constitutionally guaranteed right to harvest fish under Art. XIV, § 5.

¶ 28    Next, Plaintiffs have alleged a colorable constitutional claim.  Article XIV, § 5 was added to our State Constitution in 1972 and states: "[i]t shall be the policy of this State to conserve and protect its lands and waters for the benefit of all its citizenry . . . ." N.C. Const. art. XIV, § 5.  Our Court interpreted this amendment in *Town of Nags Head v. Richardson* as tasking the State with a constitutional duty to not only protect the public lands, but also the public trust rights attached thereto.  260 N.C. App. 325, 334, 817 S.E.2d 874, 883 (2017) ("The State is tasked with protecting these rights pursuant to the North Carolina Constitution[.]").  *See also Credle*, 322 N.C. at 532, 369 S.E.2d at 831 (Art. XIV, § 5 "mandates the conservation and protection of public lands and waters for the benefit of the public.").

¶ 29    Plaintiffs alleged the State breached this constitutional duty by "mismanaging North Carolina's coastal fisheries resources."  Specifically, Plaintiffs alleged the State has mismanaged the fisheries by "permitting, sanctioning, and even protecting two methods of harvesting coastal finfish and shrimp in State public waters"—shrimp trawling and "unattended" gillnetting—"that result in enormous resource wastage[;]" "refusing to address and remedy chronic overfishing of several species of fish[;]" and, "tolerating a lack of reporting of any harvest by the majority of commercial fishing license holders for more than a decade."  Plaintiffs alleged "the State's mismanagement of coastal fisheries resources . . . has eliminated or, at a minimum, severely curtailed the public's right to fish for [popular fish species]."  Indeed,

Plaintiffs' Complaint contains extensive data points documenting the stock status and the stock population trends of certain fish species. Thus, the alleged facts here support Plaintiffs' contention the State did not protect the harvestable fish population "for the benefit of all its citizenry." N.C. Const. art. XIV, § 5. As such, Plaintiffs have alleged a colorable constitutional claim.

¶ 30 Finally, looking at whether an adequate state remedy exists, Plaintiffs seek declaratory and injunctive relief to remedy the State's breach of trust. Assuming arguendo the public trust doctrine claim is barred by sovereign immunity, this remedy cannot be redressed through other means, as an adequate "state law remedy [does] not apply to the facts alleged" by Plaintiffs. *Craig*, 363 N.C. at 342, 678 S.E.2d at 356. Thus, alternatively, Plaintiffs have alleged a colorable constitutional claim for which no other adequate state law remedy exists. Therefore, sovereign or governmental immunity cannot bar Plaintiffs' claim.

### III. Right to Hunt, Fish, and Harvest Wildlife Clause

¶ 31 Alternatively, Plaintiffs' Complaint also alleges a claim arising directly under Article I, § 38 of our state Constitution that the State has failed to protect Plaintiffs' constitutionally protected right to harvest fish.

¶ 32 To determine whether Plaintiffs' Complaint presents sufficient allegations of a claim arising directly under Article I, we employ the same three-part test set forth in the preceding section of this Opinion. "First, a state actor must have violated an

individual's constitutional rights." *Deminski*, 2021-NCSC-58, ¶ 16. "Second, the claim must be colorable." *Id.* "Lastly, there must be no 'adequate state remedy.'" *Id.*

¶ 33 Section 38 was added to Article I of our State Constitution in 2018 by amendment proposed by legislative initiation and adopted by popular vote. *See* N.C. Const. Art. XIII, Sec. 4 (providing for constitutional amendment by legislative initiation). It states:

> The right of the people to hunt, fish, and harvest wildlife is a valued part of the State's heritage and shall be forever preserved for the public good. The people have a right, including the right to use traditional methods, to hunt, fish, and harvest wildlife, subject only to laws enacted by the General Assembly and rules adopted pursuant to authority granted by the General Assembly to (i) promote wildlife conservation and management and (ii) preserve the future of hunting and fishing. Public hunting and fishing shall be a preferred means of managing and controlling wildlife. Nothing herein shall be construed to modify any provision of law relating to trespass, property rights, or eminent domain.

N.C. Const. Art. I, § 38.

¶ 34 The State contends the language of this provision places no affirmative constitutional mandate on the State to preserve the right of the people to hunt, fish, and harvest wildlife for the public good. We disagree. "In interpreting our Constitution—as in interpreting a statute—where the meaning is clear from the words used, we will not search for a meaning elsewhere." *State v. Webb*, 358 N.C. 92, 97, 591 S.E.2d 505, 510 (2004). "The plain meaning of words may be construed by

reference to 'standard, nonlegal dictionaries.' " *Id.* (quoting *C.D. Spangler Constr. Co. v. Indus. Crankshaft & Eng'g Co.*, 326 N.C. 133, 152, 388 S.E.2d 557, 568 (1990)).

¶ 35     It is first significant that this provision is found in Article I of our Constitution titled "Declaration of Rights." N.C. Const. art. I. In general, Article I recognizes and establishes "essential principles of liberty and free government." N.C. Const. art. I, preamble. "The fundamental purpose for its adoption was to provide citizens with protection from the State's encroachment upon these rights." *Corum*, 330 N.C. at 782, 413 S.E.2d at 290. "Encroachment by the State is, of course, accomplished by the acts of individuals who are clothed with the authority of the State." *Id.* "[I]t is the judiciary's responsibility to guard and protect those rights." *Id.* at 785, 413 S.E.2d at 291.

¶ 36     The first sentence of Section 38 makes clear the right to fish belongs to the people. Moreover, its inclusion in Article I indicates the General Assembly intended for this right to be protected against encroachment by the State. Indeed, this right is "subject only to laws . . . and rules . . . to (i) promote wildlife conservation and management and (ii) preserve the future of . . . fishing." N.C. Const. art. I, § 38.

¶ 37     The plain meaning of the next phrase in the first sentence "shall be forever preserved" places an affirmative duty on the State to protect the people's right to fish. "Shall" means "has a duty to" or "must" and imposes "imperative or mandatory" obligations on the party to which "shall" applies. *Shall*, Black's Law Dictionary (11th

ed. 2019); *Internet E., Inc. v. Duro Commc'ns, Inc.,* 146 N.C. App. 401, 405–06, 553 S.E.2d 84, 87 (2001). Forever, means "for a limitless time." *Forever*, Merriam-Webster's Collegiate Dictionary 328 (7th ed. 1970). "Preserve" means "to keep safe from injury, harm or destruction." *Preserve*, Merriam-Webster at 673. Thus, the plain meaning of this phrase indicates the General Assembly, when drafting the proposed amendment, intended to create an affirmative duty on the State to preserve the right of the people to fish and harvest fish. However, the right to fish and harvest fish would be rendered meaningless without access to fish. *See Washington*, 853 F.3d at 965; *Steward*, 40 N.C. App. at 695, 253 S.E.2d at 640. Therefore, the State's duty necessarily includes some concomitant duty to keep fisheries safe from injury, harm, or destruction for all time.

¶ 38 The history of Section 38 supports this conclusion. Section 38 was initiated by the North Carolina General Assembly after the National Rifle Association (NRA) "spearhead[ed] [a] campaign for Right to Hunt and Fish state constitutional amendments." *Why does NRA support Right to Hunt and Fish (RTHF) state constitutional amendments?*, NRA-ILA (last visited June 14, 2022), https://www.nraila.org/get-the-facts/hunting-and-conservation/why-does-nra-support-right-to-hunt-and-fish-rthf-state-constitutional-amendments). As part of this campaign, the NRA released a model amendment, which closely resembles North Carolina's amendment in Article I, § 38. However, the NRA model amendment does

not include the phrase "shall be forever preserved." *See Id.* In drafting the proposed amendment, which eventually became Section 38, the General Assembly could have used the NRA's model language, but instead it specifically chose to add an additional phrase imposing a mandatory duty on the State. "Under well-settled canons of statutory canons of statutory construction, we must conclude that this change had meaning." *Wells Fargo Bank, N.A., v. Am. Nat'l Bank and Trust Co.*, 250 N.C. App. 280, 281, 791 S.E.2d 906, 908 (2016); *see also N.C. Dep't of Revenue v. Hudson*, 196 N.C. App. 765, 768, 675 S.E.2d 709, 711 (2009) (quoting *Rodriguez v. United States*, 480 U.S. 522, 525 (1987)) ("[w]hen a legislative body 'includes particular language . . . it is generally presumed that [the legislative body] acts intentionally and purposely in the disparate inclusion"); *Emerson v. Cape Fear Country Club, Inc.*, 259 N.C. App. 755, 761, 817 S.E.2d 402, 407 (2018) ("When the General Assembly adopts verbatim some provisions of a model code and rejects others, we assume that the General Assembly consciously chose to author its own alternate provisions.").

¶ 39 In sum, both the plain language and history of Article I, § 38 support the conclusion this provision imposes an affirmative duty on the State to preserve the people's right to fish and harvest fish. This includes some duty to preserve fisheries for the benefit of the public. In this case, Plaintiffs' have alleged facts, which if proven, may tend to show the State did not properly manage the fisheries so as to forever preserve the fish populations for the benefit of the public. *See* N.C. Const.

art. I, § 38. As such, Plaintiffs have alleged a colorable constitutional claim under Article I, § 38.

¶ 40　　Finally, looking at whether an adequate state remedy exists, here again, Plaintiffs seek declaratory and injunctive relief to remedy the State's breach of their duty to protect the right to fish and harvest fish. Again, presuming arguendo the public trust doctrine claim was to be barred by sovereign immunity, Plaintiffs' alleged wrong cannot be redressed through other means, as an adequate "state law remedy [does] not apply to the facts alleged" by Plaintiffs. *Craig*, 363 N.C. at 342, 678 S.E.2d at 356. Thus, Plaintiffs have alleged a colorable constitutional claim for which no other adequate state law remedy exists. Therefore, sovereign or governmental immunity cannot bar Plaintiffs' claim. Consequently, the trial court did not err in denying the State's Motion to Dismiss pursuant to Rules 12(b) (2) and (6) on the basis of sovereign immunity.

## Conclusion

¶ 41　　Accordingly, for the foregoing reasons, we affirm the trial court's Order Denying the State's Motion to Dismiss. "In so ruling, we express no opinion on the ultimate merits, if any, of plaintiffs' allegations and claims." *Locklear v. Lanuti*, 176 N.C. App. 380, 387, 626 S.E.2d 711, 716 (2006) (holding the allegations in the complaint were sufficient to survive a 12(b)(6) motion to dismiss).

　　AFFIRMED.

Judges MURPHY and WOOD concur.